**Randall CURTIS, Plaintiff–Appellant,**

v.

**Brian BEMBENEK, Defendant–Appellee.**

**No. 92–3434.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 15, 1994.

Decided Feb. 23, 1995.

Randall Curtis, pro se.

Gina Brock, Chicago, IL (argued), for Randall Curtis.

Michael G. Cainkar, Chicago, IL (argued), for Brian Bembenek.

Before COFFEY, RIPPLE, and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

In this appeal from the dismissal of a civil rights suit brought by a prisoner, the principal question before us is whether a police officer who gives allegedly perjurious testimony during a preliminary hearing and a pretrial suppression hearing is entitled to absolute witness immunity from liability under 42 U.S.C. § 1983 for damages caused by his testimony. We believe that a police officer who testifies in court at these adversarial pretrial hearings is absolutely immune from § 1983 liability, and we affirm.

## BACKGROUND

Although the details of this case are sketchy, the following facts can be gleaned from the complaint. Plaintiff Randall Curtis was arrested without a warrant at the scene of a crime sometime before March 21, 1990 by the Burbank Police Department and was taken into custody.[1] A preliminary hearing was held in Cook County Circuit Court to determine whether probable cause existed to support the warrantless arrest. Defendant Brian Bembenek, a City of Burbank police officer, was the only witness to testify at the preliminary hearing. At the hearing, Curtis alleged, Officer Bembenek "falsely proclaimed [that] at the scene [of the crime] he conducted an on scene investigation and obtain[ed] crucial and vital information from victim and parent which warrant my arrest and confinement." (Compl. at 7.) Aside from Officer Bembenek's "malicious and false testimony," Curtis further alleged, "there was no other testimony submitted at the hearing to cause or perpetuate my false imprisonment." *Id.* Curtis added that Bembenek's perjured testimony was the "direct cause of my false imprisonment." *Id.*

Several months later, however, at the hearing on Curtis' motion to quash arrest and suppress evidence, Officer Bembenek allegedly changed his testimony. According to Curtis, Bembenek testified at the suppression hearing that he did not speak to the victim or the parent at the scene, but only saw the victim in the car shaking her head

---

1. The circumstances surrounding Curtis' arrest are not reflected in the appellate record. The record also does not contain any documents or transcripts from the criminal proceedings in the state court.

yes. To corroborate his claim that Bembenek had committed perjury, Curtis alleged that a second police officer testified at the suppression hearing that Bembenek had no opportunity to speak to the victim or the parent at the scene.[2]

On July 14, 1992, Curtis, then an Illinois prisoner on mandatory supervised release, filed a *pro se* complaint in the district court seeking compensatory and punitive damages under 42 U.S.C. § 1983[3] against Bembenek. Officer Bembenek moved to dismiss the complaint, arguing that as a duly appointed government law enforcement officer, he was entitled to absolute immunity under *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Curtis did not respond to the motion to dismiss.

The district court granted the motion to dismiss without leave to amend. Relying on *Briscoe,* Judge Lindberg observed that "[t]he Supreme Court has made clear that governmental witnesses testifying in any court action are entitled to absolute immunity from § 1983 liability." *Curtis v. Bembenek,* No. 92 C 3733 (N.D.Ill. Sept. 22, 1992). The judge added that "[s]ince the only conduct referred to in Curtis's complaint involves testimony in a state criminal proceeding, the court finds that defendant is entitled to absolute immunity." *Id.*

On October 6, 1992, Curtis, acting *pro se,* filed a motion to reconsider and a notice of appeal. After the parties filed their appellate briefs, this court appointed counsel for Curtis.

## ANALYSIS

Curtis challenges the district court's ruling that Bembenek enjoys absolute witness immunity from liability under § 1983 for his testimony at the pretrial proceedings. He contends that the district court erred in dismissing his complaint because this circuit has not extended absolute immunity to police officers who commit perjury during testimo-

ny at adversarial pretrial proceedings. He also argues that the district court erred by failing to ensure that he, a prisoner proceeding *pro se,* was notified of the consequences of failing to respond to the motion to dismiss. Under *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), he contends, he was entitled to such notice.

■■■ In considering these issues, we accept all well-pleaded facts as true, draw all inferences in favor of the plaintiff, and resolve all ambiguities in favor of the plaintiff. *Canedy v. Boardman,* 16 F.3d 183, 188 (7th Cir.1994). Moreover, in reviewing a *pro se* complaint, we must employ standards less stringent than if the complaint had been drafted by counsel. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Del Raine v. Williford,* 32 F.3d 1024, 1050 (7th Cir.1994).

## I. Absolute Immunity for Witnesses at Adversarial Pretrial Proceedings

We begin our analysis of the applicability of absolute immunity under § 1983 with the Supreme Court's opinion in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

### A. *Briscoe v. LaHue* and Its Progeny

In *Briscoe,* the Court held that a police officer had absolute immunity from suit under § 1983 for giving perjured testimony at the defendant's criminal trial. The Court rooted its holding in the absolute immunity granted at common law to witnesses who participated in judicial proceedings. At common law, the Court observed, courts were concerned that a witness who was apprehensive about subsequent damages liability might be reluctant to testify, or if the witness did testify, might distort his or her testimony because of fear of liability. *Id.* at 333, 103 S.Ct. at 1114. Protection for witnesses in the form of absolute immunity was aimed to allay these concerns. Section 1983, the

---

2. The complaint does not assert how the state circuit court ruled upon the motion to quash arrest and suppress evidence.

3. Section 1983 provides a civil claim for damages against any person who, acting under color

of state law, deprives another person of a right, privilege, or immunity secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983.

Court added, did not abrogate the absolute immunity existing at common law. *Id.* Finally, the *Briscoe* Court noted, functional categories, rather than the status of the defendant, governed immunity analysis: because police officers on the witness stand performed the same functions and were subject to the same procedural safeguards as any private witnesses, these officers should be entitled to the same absolute immunity from liability under § 1983 that private witnesses enjoyed. *Id.* at 342–43, 103 S.Ct. at 1119–20.

■ While *Briscoe* addressed the availability of absolute immunity from § 1983 liability for testimony given at trial, the issue presented here is whether absolute immunity extends to allegedly perjured testimony given by a police officer during certain pretrial proceedings—specifically, a preliminary hearing to determine whether probable cause existed to support a warrantless arrest, and again at a hearing on a motion to quash arrest and suppress evidence. The *Briscoe* Court explicitly declined to decide whether a witness is absolutely immune from suit based on testimony given at pretrial proceedings such as probable cause hearings, *id.* at 329 n. 5, 103 S.Ct. at 1112 n. 5, and this question represents one of first impression in this circuit.

This court has held that police officers testifying before a grand jury are entitled to absolute immunity. *Kincaid v. Eberle,* 712 F.2d 1023, 1023–24 (7th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983). In *Kincaid,* a one paragraph, *per curiam* opinion based on a *pro se* brief and decided without oral argument, we noted that "the argument for absolute immunity is stronger in the grand jury setting than in the trial setting, because false testimony before the grand jury is less harmful than false testimony at trial; the grand jury can indict, but cannot convict." *Id.* at 1024. *Kincaid,* however, has not been extended beyond the grand jury context, *see Juriss v. McGowan,* 957 F.2d 345, 348 (7th Cir.1992) (*Kincaid* absolute immunity applied only to defendant officer's grand jury testimony, and not to officer's making of alleged false arrest), and at least two other courts have called into

question *Kincaid*'s precedential value. *See Wheeler v. Cosden Oil & Chem. Co.,* 734 F.2d 254, 261 n. 16 (5th Cir.) (criticizing *Kincaid* as unpersuasive and "cursory in the extreme"), *modified on other grounds,* 744 F.2d 1131 (5th Cir.1984); *White v. Frank,* 680 F.Supp. 629, 636 n. 10 (S.D.N.Y.1988) (describing the opinion as being of "uncertain ... persuasiveness" and "lack[ing] any in-depth consideration of the various factors at work in the *Briscoe* decision"), *appeal dismissed on other grounds,* 855 F.2d 956 (2d Cir.1988).

The majority of the circuits have afforded absolute immunity to witnesses, including police officers, charged under § 1983 for their allegedly perjurious testimony at various types of pretrial proceedings. *See Moore v. McDonald,* 30 F.3d 616, 619–20 (5th Cir. 1994) (deputy sheriff's testimony in criminal defendant's pretrial suppression hearing absolutely immune); *Strength v. Hubert,* 854 F.2d 421, 423–25 (11th Cir.1988) (investigator for state attorney general's office entitled to absolute immunity regarding grand jury testimony); *Daloia v. Rose,* 849 F.2d 74, 75–76 (2d Cir.) (FBI agents and police officer entitled to absolute immunity for testimony at pretrial suppression hearing), *cert. denied,* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988); *Williams v. Hepting,* 844 F.2d 138, 142–43 (3d Cir.) (prosecution witness who testified at preliminary hearing absolutely immune), *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988); *Holt v. Castaneda,* 832 F.2d 123, 125–27 (9th Cir.1987) (police officer received absolute immunity for testimony during preliminary examination and a hearing on motion to quash search warrants), *cert. denied,* 485 U.S. 979, 108 S.Ct. 1275, 99 L.Ed.2d 486 (1988); *Macko v. Byron,* 760 F.2d 95, 97 (6th Cir.1985) (grand jury witnesses absolutely immune); *San Filippo v. U.S. Trust Co.,* 737 F.2d 246, 254 (2d Cir.1984) (noting in dictum that immunity would be available to a grand jury witness), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985); *Briggs v. Goodwin,* 712 F.2d 1444, 1448–49 (D.C.Cir.1983) (federal prosecutor absolutely immune for sworn statement at a hearing on a motion during the grand jury phase of an investigation), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79

L.Ed.2d 169 (1984); *but see Krohn v. United States*, 742 F.2d 24, 31 (1st Cir.1984) (police officer not entitled to absolute immunity for statements made in the course of obtaining arrest warrant); *Wheeler v. Cosden Oil & Chem. Co.*, 734 F.2d 254, 261 (5th Cir.) (absolute immunity not afforded to false testimony submitted at probable cause determination), *modified on other grounds*, 744 F.2d 1131 (5th Cir.1984).

■ Moreover, the policy considerations for granting absolute immunity to witnesses testifying at trial apply with equal force to witness testimony in adversarial pretrial settings. *Moore v. McDonald*, 30 F.3d 616, 619 (5th Cir.1994) (citing *Holt v. Castaneda*, 832 F.2d 123, 125 (9th Cir.1987)). " 'Whether testifying at trial or in a pretrial proceeding, a witness who knows he may be subjected to costly and time-consuming civil litigation for offering testimony that he is unable to substantiate may consciously or otherwise shade his testimony in such a way as to limit potential liability.' " *Id.* (quoting *Holt*, 832 F.2d at 125). Because of such tendencies to shade testimony, witness immunity is accorded to encourage full disclosure as a means of ascertaining the truth. *Id.* In adversarial pretrial matters, as in trials, the witness testifies in court, under oath, under the supervision of an impartial judge, and is subject to criminal penalty for perjury. Furthermore, in both types of proceedings, the witness is available for cross-examination. *Id.; Holt*, 832 F.2d at 125. Because Bembenek's testimony at both the preliminary hearing and the pretrial suppression hearing was made under oath and subject to cross-examination, " '[w]e see no principled basis for distinguishing between the [adversarial] pretrial proceedings and the trial on the merits in determining whether absolute immunity should be granted to a police officer witness.' " *Moore*, 30 F.3d at 619 (quoting *Holt*, 832 F.2d at 125).

Accordingly, we conclude that Bembenek is entitled to absolute immunity under *Briscoe* and its progeny for his testimony at both the preliminary hearing and the hearing on Curtis' motion to quash arrest and suppress evidence.

**B. Absolute Immunity for Witnesses at Common Law**

Curtis argues that this case is controlled by the Supreme Court's decision in *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), rather than by *Briscoe* and the appellate decisions that have granted absolute immunity to police officers who testify as witnesses in pretrial proceedings. Curtis rejects the applicability of these appellate decisions because they did not consider the distinction drawn in the common law— and noted in *Malley* —between complaining and lay witnesses.[4]

In *Malley*, the Supreme Court denied absolute immunity to a police officer for statements made in an affidavit submitted to a magistrate for the purpose of obtaining an arrest warrant. The Court noted that, at common law, a "complaining witness" who procured the issuance of an arrest warrant by submitting a complaint could be held liable if "the complaint was made maliciously and without probable cause." *Id.* at 340–41, 106 S.Ct. at 1096. Because the police officer's actions were analogous to those of a complaining witness, absolute immunity did not apply. *Id.* at 340, 106 S.Ct. at 1095–96. Curtis suggests that the role played by Officer Bembenek in directly causing his arrest is akin to a complaining witness, and "complaining witnesses were not absolutely immune at common law." *Id.*

■ We note that the complaining witness theory is closely associated with the common law cause of action for malicious prosecution.[5]

---

4. Curtis also argues that absolute immunity from § 1983 liability should not extend to Officer Bembenek in connection with his preliminary hearing testimony because no counterpart to this privilege existed in the common law tradition. We note, however, that at least two courts have identified a historical basis in the common law for absolute immunity for witnesses who testify at pretrial proceedings. *See, e.g., Williams v.*

*Hepting*, 844 F.2d 138, 142 (3rd Cir.), *cert. denied*, 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988); *Holt v. Castaneda*, 832 F.2d 123, 125 (9th Cir.1987), *cert. denied*, 485 U.S. 979, 108 S.Ct. 1275, 99 L.Ed.2d 486 (1988).

5. In resolving questions of immunity, common law courts treated witnesses in defamation actions differently than witnesses in actions for

The term "complaining witness" has been defined by one appellate court as the person "who actively instigated or encouraged the prosecution of the plaintiff." *Anthony v. Baker*, 955 F.2d 1395, 1399 n. 2 (10th Cir. 1992). Similarly, in a malicious prosecution action, one of the essential elements that a plaintiff must allege and prove is the defendant's role in instituting criminal proceedings against the plaintiff. *Id.* (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 119 (5th ed. 1984)). Other elements that must be alleged and proved in a malicious prosecution action include malice; the absence of probable cause for the proceeding; and termination of the proceeding in favor of the plaintiff. *See Heck v. Humphrey*, —— U.S. ——, ——, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994); *White v. Frank*, 855 F.2d 956, 959 (2d Cir.1988); *Misselhorn v. Doyle*, 257 Ill.App.3d 983, 986, 195 Ill.Dec. 881, 883–84, 629 N.E.2d 189, 191–92 (5th Dist.1994).

We do not read Curtis' complaint to state a claim for malicious prosecution.[6] He has set forth a somewhat amorphous cause of action, alleging for example, that Bembenek's false testimony "direct[ly] cause[d]" his false imprisonment, and that aside from Bembenek's "malicious" testimony, "there was no other testimony submitted at the [preliminary] hearing to cause or perpetuate my false imprisonment." (Compl. at 7.) Significantly, however, Curtis has not alleged that the underlying criminal proceeding concluded in his favor. *Compare Anthony v. Baker*, 955 F.2d 1395 (10th Cir.1992) (remanding malicious prosecution action of *acquitted* plaintiff against defendant officer to determine whether deputy acted as a complaining witness with respect to preliminary hearing testimony). Even construing Curtis' complaint liberally, as we must, we find no suggestion that Curtis received a favorable termination of his prior criminal prosecution. *See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir.1994) (failure of arrestee to allege a different element of malicious prosecution—absence of probable cause—rendered deputy sheriff absolutely immune for testimony in adversarial pretrial suppression hearing). Because Curtis has not stated a claim for malicious prosecution, his reliance on the complaining witness theory is inapplicable.

The district court properly dismissed this case on the grounds that defendant enjoyed absolute immunity from § 1983 liability for his testimony at Curtis' preliminary hearing and again at the hearing on the motion to quash arrest and suppress evidence.

## II. Failure to Give Notice

■ Curtis also charges that the district court erred under *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), in failing to ensure that he was notified of the consequences of

---

malicious prosecution. Witnesses in defamation actions who could demonstrate that any defamatory statements they made were relevant to the judicial proceedings were afforded absolute immunity. *Briscoe*, 460 U.S. at 330–32, 103 S.Ct. at 1113–14; *Anthony v. Baker*, 955 F.2d 1395, 1399 (10th Cir.1992). By contrast, in actions for malicious prosecution, complaining witnesses who played a role in initiating baseless prosecutions were not absolutely immune. *White v. Frank*, 855 F.2d 956, 959 (2d Cir.1988). Thus, although an ordinary witness could not be sued at all, a "complaining witness" (*i.e.*, the private party who actively instigated or encouraged the suit) could be sued for malicious prosecution. *Anthony*, 955 F.2d at 1399 (citing *Malley v. Briggs*, 475 U.S. 335, 340, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

6. In a concurring opinion in the Supreme Court's recent case, *Albright v. Oliver*, —— U.S. ——, —— – ——, 114 S.Ct. 807, 814–17, 127 L.Ed.2d 114 (1994), Justice Ginsburg implied that a prisoner may not bring a malicious prose-

cution action against police officers. Characterizing a prisoner's reliance on a malicious prosecution theory as "anomalous," Justice Ginsburg pointed out that the "principal player in carrying out a prosecution—in 'the formal commencement of a criminal proceeding,' ... is not police officer but prosecutor." *Id.* at ——, 114 S.Ct. at 816 n. 5 (citation omitted). Justice Ginsburg suggested that a claim against an officer who gives misleading testimony at a preliminary hearing would be more appropriately brought under a Fourth Amendment theory which charged the officer with "perpetuating the [defendant's] seizure" for trial as long as the prosecution remained pending. *Id.* at ——, 114 S.Ct. at 816. Although Justice Ginsburg also speculated that a police officer who initiates and pursues a criminal prosecution may be fully protected from damages liability by an immunity defense, *id.* at ——, 114 S.Ct. at 816 n. 5, Justice Stevens responded in his dissent that the immunity issue "is neither free of difficulty ... nor properly before us." *Id.* at ——, 114 S.Ct. at 831 n. 26.

not responding to defendant's motion to dismiss.

*Lewis v. Faulkner* involved a prisoner, suing *pro se*, who failed to respond to the defendants' motion to dismiss or in the alternative for summary judgment. Neither the motion papers nor any instructions from the court informed Lewis of the consequences of his failure to counter the defendants' supporting affidavit with his own affidavits. This court vacated the dismissal of Lewis' complaint. We explained that a district court cannot properly act upon a motion for summary judgment without providing the opposing party a "reasonable opportunity" to contradict the material facts asserted by movant. *Id.* at 101. This "reasonable opportunity" was implicit in Rule 56(e) and "presupposes notice." *Id.* at 102. We held that a prisoner who is a plaintiff in a civil case and is not represented by counsel is entitled to receive notice of the consequences of failing to respond to a motion for summary judgment or to a motion to dismiss supported by affidavits. *Id.*

Although Curtis concedes that the holding in *Lewis* is limited to a defendant's motion for summary judgment, he argues that the rationale underlying the ruling in *Lewis* also applies to a motion to dismiss addressing solely the sufficiency of the complaint. We disagree.

Under Rule 56(e), the party opposing a motion for summary judgment may not rest upon the mere allegations or denials of his or her pleadings; unless the nonmoving party counters with affidavits of his or her own, the facts asserted in the movant's affidavits will be treated as true.[7] Similarly, Rule 12(b) provides that if a court, on a motion to dismiss, considers matters outside the pleading, the court shall treat the motion as one for summary judgment, and the nonmovant must be given a "reasonable opportunity" to contradict the material facts asserted by the moving party.

Significantly, however, Rule 12(b) "says nothing about a 'reasonable opportunity' to contradict when dismissal motions are not treated as summary judgment motions." *English v. Cowell*, 10 F.3d 434, 437 (7th Cir.1993). Although Curtis was entitled to submit papers in opposition to the defendant's motion, it was also appropriate for him to rely on his pleadings. A *pro se* plaintiff who has alleged well-pled facts supporting a claim for relief can withstand dismissal without responding to a motion to dismiss. *See Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir.1983) (noting that notification of plaintiff of possible consequences of failing to respond not necessary in context of Rule 12(b)(6) motion to dismiss).[8] The plaintiff can simply rest on the assumed truthfulness and liberal construction afforded his complaint. Unlike the summary judgment context, the nonmovant's lack of response to a motion to dismiss constitutes no admission of the proponent's factual assertions.

At least two district courts have developed a practice of admonishing *pro se* litigants about the potential consequences of failing to respond to a motion to dismiss. *See, e.g., Russell v. District of Columbia Dep't of Corrections*, Civ.A. No. 94–1456 SSH, 1994 WL 512402, at *1 (D.D.C. Sept. 6, 1994) (citing *Fox v. Strickland*, 837 F.2d 507 (D.C.Cir.

---

7. Under Fed.R.Civ.P. 56(e), the opposing party may not rest upon the mere allegations or denials of his or her pleadings, otherwise the facts asserted in the movant's affidavits will be treated as true:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

8. We find further support for this conclusion in *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985) (citations omitted), where the court pointed out that the general rule in *Lewis* does not apply in the context of a motion to dismiss:

> It is not reversible error to fail to give [notice of the possible consequences of a failure to respond] in the limited circumstances where it appears "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ... This is consistent with the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim. ...

1988)); *Patrick–El v. Kelly,* Civ.A. No. 93–1449, 1993 WL 433591, at *1 (D.D.C. Oct. 14, 1993); *Schroeder v. Polk,* 842 F.Supp. 355, 356 (N.D.Ind.1993); *Nixon v. Rose,* 631 F.Supp. 794, 795 (N.D.Ind.1985). In these cases, the defendants' motions turned out to be dispositive. By contrast, in the present case, the court did not intend to treat Officer Bembenek's motion to dismiss as a motion for summary judgment. Accordingly, no instruction from the court regarding the possible consequences of not responding to defendant's motion was warranted.

The district court did not err in failing to advise Curtis of the consequences of failing to respond to a motion to dismiss.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of defendant's motion to dismiss, terminating this case.