**Mirko PETROVICH, Plaintiff,**

v.

**LPI SERVICE CORPORATION, d/b/a LaSalle Partners, Defendant.**

**No. 94 C 3071.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 4, 1996.

John P. De Rose, John P. De Rose & Associates, Burr Ridge, IL, for plaintiff.

Barry A. White, Mayer, Brown & Platt, Chicago, IL, Jeffrey S. Fowler, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, IL, for defendant.

### MEMORANDUM OPINION

GRADY, District Judge.

Before the court is a motion by defendant for partial summary judgment limiting plaintiff's employment discrimination remedies. For the reasons stated in this opinion, the motion is denied.

### BACKGROUND

The background facts in the case were recounted fully in the court's memorandum opinion of June 3, 1996. *See Petrovich v. LPI Service Corp.,* 1996 WL 296639, (N.D.Ill. June 3, 1996). In summary, plaintiff Mirko Petrovich is a citizen of the United States of Serbian national origin. In March 1990, Petrovich was hired by Trammell Crow, a large national real estate firm, to work at the Chancellory office complex in Itasca, Illinois. The Chancellory consists of six office buildings, and Petrovich was hired to be chief engineer of One Pierce Place, one of the largest of the buildings. Effective January 1, 1992, Trammell Crow ceased managing the Chancellory and LaSalle Partners was awarded the management contract. Stephen

Zsigray, a LaSalle vice president, was named general manager of the complex. LaSalle hired all of the engineers at the Chancellory and assumed their union contract. The engineers, including the chief engineers, were represented by Operating Engineers Local 399.

In May 1992, Zsigray announced that he was changing the Chancellory's engineering management structure to conform with the system used by LaSalle, which allowed for only one chief engineer per complex. The engineers and their union representative selected Art Wyruchowski to be chief engineer because he had the most seniority. Petrovich and Paul Krause became the assistant chief engineers, supervised by Wyruchowski. Petrovich continued to supervise the same building and with the same compensation. The defendant admits that Zsigray and Wyruchowski discussed the possibility of terminating Petrovich for performance in September 1992. Petrovich asserts that Wyruchowski informed him that Zsigray had told Wyruchowski to fire "the foreigner"; Zsigray denies that he made this reference. In late October 1992, LaSalle demoted Krause to engineer, leaving Petrovich as the only assistant chief engineer. All engineers would report to Petrovich, who would report to Wyruchowski. At some point after this change, but before the end of 1992, Wyruchowski prepared a positive written evaluation of Petrovich. Zsigray admitted at his deposition that when he saw this performance review, he expressed his displeasure to Wyruchowski that it was too favorable, and threw it away.

On January 8, 1993, Zsigray gave Wyruchowski the choice of either resigning or being fired. Wyruchowski resigned effective January 23, 1993, and states that he was forced to resign in part because he had been too easy on Petrovich. On January 15, 1993, Petrovich met with Zsigray and expressed his desire to become chief engineer, noting that he was the most senior engineer. Zsigray told Petrovich that he would not be considered because of his poor relations with his subordinates. On February 8, 1993, LPI hired John Learch, an American-born white

male, to be chief engineer. On February 23, Petrovich presented Zsigray with a copy of a grievance letter he had written to the union protesting the hiring of Learch. According to Petrovich, Zsigray reacted to the letter by angrily stating that plaintiff would never become a chief and that "Serbian guys like [him] were killing everybody." Zsigray denies making any statements regarding Serbs or people being killed.

Petrovich filed an EEOC charge on February 25, 1993. On March 4, 1993, he received the formal notice of reprimand and suspension Zsigray and Learch prepared after jointly inspecting One Pierce Place on February 23. On April 14, 1993, the EEOC sent notice of Petrovich's charge to LaSalle. On September 13, 1993, Learch issued Petrovich another formal reprimand pursuant to the union contract. On October 6, 1993, Petrovich filed a second EEOC charge claiming discrimination and retaliation with respect to this reprimand. After receiving Zsigray's approval, Learch prepared a letter of termination to be given to Petrovich. On October 13, 1993, Petrovich was terminated at a meeting attended by Learch, Zsigray and the leasing manager of the Chancellory. Petrovich grieved this termination under the collective bargaining agreement between LaSalle and Local 399. By a letter dated June 3, 1994, Petrovich was "terminated" for the second time based on misrepresentations on his resume uncovered in LaSalle's investigation into Petrovich's grievance. In the second dismissal letter, Zsigray stated that LaSalle's investigation of Petrovich's resume uncovered that he only worked for the Four Seasons Hotel in Chicago from January 1989 to April 1989, rather than the September 1988 to October 1989 period reported on his resume. Zsigray noted that LaSalle's application for employment requires applicants to sign a statement that any misrepresentation of fact "will be sufficient reason not to hire me and may be cause for dismissal." Zsigray's letter informed Petrovich that he was dismissed for "resume fraud," effective immediately. Petrovich grieved this second dismissal, and an arbitration hearing was scheduled on the grievances, but the hearing was later dropped by the union.

Defendant LaSalle now moves for partial summary judgment to limit Petrovich's remedies to backpay under the Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering such a motion, the court must view all inferences in the light most favorable to the nonmoving party. *Tolentino v. Friedman,* 46 F.3d 645, 649 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1995). "A dispute over material facts is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Kennedy v. Children's Serv. Soc'y of Wis.,* 17 F.3d 980, 983 (7th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in" its favor on a material question. *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir.1995).

Once the moving party has supported its motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Any fact asserted in the movant's affidavit will be accepted by the court as true unless the adverse party submits its own affidavits or other admissible evidence contradicting the assertion. *Curtis v. Bembenek,* 48 F.3d 281, 287 (7th Cir.1995).

## LIMITATIONS ON THE PLAINTIFF'S REMEDIES AFTER McKENNON

LaSalle contends that Petrovich's possible remedies for alleged employment discrimination are limited to backpay because of the Supreme Court's recent ruling in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). In *McKennon,* an age discrimination case, the Court held that after-acquired evidence of employee wrongdoing affects the remedies available to the plaintiff.[1] *Id.* at ——, 115 S.Ct. at 886. The plaintiff had removed and copied several confidential financial documents prior to her discharge in what the defendant employer said was a cost-cutting move. At her deposition, she revealed that she had copied and retained financial documents. The defendant employer sent her a letter terminating her a second time, and notifying her that she would have been discharged for that misconduct if it had known when it occurred. The Supreme Court held that in a case with after-acquired evidence of wrongdoing, "neither reinstatement nor front pay is an appropriate remedy." *Id.* The Court also held that the trial court should calculate backpay "from the date of the unlawful discharge to the date the new information was discovered." *Id.* To rely on the after-acquired evidence, the employer must establish that "the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at ——— ——, 115 S.Ct. at 886–87.

LaSalle contends that Petrovich's possible remedies should be limited to backpay because of after-acquired evidence of resume fraud it uncovered in investigating Petrovich's grievance of his first dismissal. In the second dismissal letter sent to Petrovich, dated June 3, 1994, Zsigray stated that La-

---

1. While the Supreme Court's *McKennon* holding involved the Age Discrimination in Employment Act ("ADEA"), the Court indicated that the reasoning should likely apply to the other employment discrimination statutes as well. Subsequent decisions of the lower courts have extended *McKennon*'s reasoning on after-ac-

quired evidence to Title VII. *See Wallace v. Dunn Construction Co.,* 62 F.3d 374, 378 (11th Cir.1995); *Naszke v. Federal Express Corp.,* 1996 WL 450832, at * 8 (N.D.Ill. Aug. 6, 1996). The Seventh Circuit has not yet considered a case involving *McKennon* and after-acquired evidence.

Salle's investigation of Petrovich's resume uncovered that he only worked for the Four Seasons Hotel in Chicago from January 1989 to April 1989, rather than the September 1988 to October 1989 period reported on his resume. LaSalle's application for employment required applicants to sign a statement that any misrepresentation of fact "will be sufficient reason not to hire me and may be cause for dismissal." In its further investigation of Petrovich's resume after the second dismissal, LaSalle discovered that Petrovich had omitted all references to his employment by Acorn Tool, the Emergency Response People, and the Turnberry Isle Yacht and Country Club. Memorandum in Support of Defendant's Motion for Partial Summary Judgment at 5. Petrovich admitted in his answers to interrogatories that he had worked for those firms. Plaintiff's Answers to Interrogatories, ¶¶ 6, 8. In its motion, LaSalle argues that any remedy for Petrovich's employment discrimination claim must be limited to backpay from the date of his first termination to the date of this second termination, because of the after-acquired evidence of this wrongdoing with his resume.

In response, Petrovich contends that *McKennon* is inapplicable to this case because: (1) there is a genuine issue of material fact as to whether he actually prepared or submitted the allegedly false resume; and (2) there is a genuine issue of material fact as to whether the after-acquired evidence of resume inaccuracies would alone have been the cause of his dismissal if LaSalle had known about them at the time of his first discharge. While we find that there is no issue of material fact that Petrovich was responsible for his resume, we are not persuaded as a matter of law that the after-acquired evidence alone would have caused LaSalle to dismiss him.

■ At his deposition and in his response, Petrovich contends that his resume with La-Salle was not prepared by him, and not submitted to LaSalle by him, and thus he is not responsible for its content. Petrovich

Deposition at 103–104. Petrovich's attempt to create an issue of material fact here is undercut by his own later deposition testimony, in which he admits that he was given a copy of this resume by someone at LaSalle about the time that it was submitted. Petrovich Deposition at 161. Petrovich also admits in his 12(n) statement that the dates of his employment provided in his interrogatories do not match the dates of his employment provided in the LaSalle resume. Plaintiff's Response to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 12(n) at ¶¶ 1, 3. Because Petrovich's own testimony establishes that he had a copy of the resume from LaSalle months prior to his termination and did not seek to correct the inaccuracies, we find no genuine issue of material fact over whether Petrovich knew of the inaccuracies or is responsible for the resume.[2]

Secondly, Petrovich asserts that there is a genuine issue of material fact as to whether the after-acquired evidence of wrongdoing would, standing alone, have caused LaSalle to dismiss him had LaSalle known about it at the time of his first discharge. In response, LaSalle argues the fact that the resume discrepancies *did* result in the second dismissal in June 1994 shows that they would have had the same result in October 1993 had they been known then.

■ Petrovich contends that the second dismissal arose out of the pending litigation, not any LaSalle policy of dismissal for resume misrepresentations, and therefore does not meet the burden under *McKennon.* But *McKennon* does allow the employer to utilize after-acquired evidence of wrongdoing that would lead to discharge, "even if it is acquired during the course of discovery in a suit against the employer and even if the information might have gone undiscovered absent the suit." *McKennon,* 513 U.S. at ——, 115 S.Ct. at 886. The fact that LaSalle uncovered the evidence of Petrovich's resume misrepresentations during the pendency of this lawsuit would not prevent this evidence

---

**2.** We also note that at a Rule 16 conference before us on October 24, 1994, plaintiff's counsel denied that "the resume was false in any material particulars." At that time, plaintiff's counsel

did not contest whether Petrovich had in fact prepared the resume, and apparently has only now raised this issue in response to defendant's motion for partial summary judgment.

**630**

from forming the grounds for discharge. But LaSalle does not offer sufficient evidence by affidavit from Zsigray or its other managers that the discovery of these resume misrepresentations alone would have caused them to discharge Petrovich. Such affidavit testimony of a LaSalle manager might be sufficient to shift the burden back to Petrovich to produce affirmative evidence to the contrary. *See Wallace v. Dunn Construction Co.*, 62 F.3d 374, 380 (11th Cir.1995)(holding that employer affidavits that falsified application would have resulted in termination would meet employer's burden under *McKennon* for summary judgment). Requiring affidavits to prove the employer's reliance on after-acquired evidence is in line with Seventh Circuit case law before *McKennon*. *See Washington v. Lake County*, 969 F.2d 250 (7th Cir.1992), *reversed on other grounds*, *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

We disagree with LaSalle that its second "termination" of Petrovich is an "obviously superior substitute" for sworn testimony from LaSalle managers that they would have terminated Petrovich for resume fraud alone. That LaSalle did discharge Petrovich may be simply a tactical move consistent with its desire to limit damages in this case and not of itself a demonstration that this is what it would have done had it made the discovery without a lawsuit pending. We are willing to consider a further summary judgment motion upon presentation of affidavit testimony explaining why the misstatement of dates and omission of prior employers on Petrovich's LaSalle resume would have been considered serious enough to result in his dismissal.

## CONCLUSION

For the reasons stated in this opinion, LaSalle's motion for partial summary judgment is denied. If it desires to do so, LaSalle may file a further motion supported by affidavit by December 27, 1996. The court will review any filing and determine whether a response from Petrovich is necessary.