**James J. CERVANTES, Plaintiff,**

v.

**Larry JONES, Defendant.**

**No. 97 C 1520.**

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 14, 1998.

Kenneth N. Flaxman, Kenneth N. Flaxman, P.C., Chicago, IL, for Plaintiff.

Charles Henry Wahtola, Hinshaw & Culbertson, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff James J. Cervantes ("Cervantes") filed this action against Defendant South El-

gin Deputy Chief of Police Larry Jones ("Jones") pursuant to 42 U.S.C. § 1983 (" § 1983") and Illinois law alleging claims of malicious prosecution. Cervantes alleges that Jones fabricated evidence that made it falsely appear that Cervantes had committed murder. Cervantes further alleges that Jones falsely testified before a grand jury to the truthfulness of the fabricated evidence and that, as a result, Cervantes was indicted for murder. Now before the Court is Jones' motion for summary judgment. For the reasons set forth below, this Court grants Jones' motion.

## BACKGROUND [1]

At approximately 6:30 a.m. on July 20, 1992, a neighbor of Sally Lavergne ("Lavergne") notified the police after hearing Lavergne's alarm clock ringing and finding Lavergne's door open. The police subsequently found Lavergne dead in her home in South Elgin, Illinois. A post-mortem evaluation of Lavergne suggested, among other things, that Lavergne died of multiple stab wounds to her chest and abdomen.

Upon finding Lavergne, the police immediately began an investigation by, among other things, interviewing Lavergne's co-workers, family and friends. The investigation regarding Lavergne's murder took place over several months and included various officers and agents from the South Elgin Police Department, Illinois State Police Department, St. Charles Police Department, West Dundee Police Department and the FBI. One of the police officers investigating Lavergne's murder was Jones.

After receiving information suggesting that Cervantes had been intimately involved with Lavergne prior to her death, Jones interviewed Cervantes on July 20, 1992 and again, with another detective, on July 25, 1992. On December 8, 1992, Jones and two other detectives again interviewed Cervantes at Cervantes' apartment. Later that night, Cervantes went to the police station around midnight and took a polygraph examination.

At about 5:00 a.m. the next morning, December 9, 1992, Jones gave Cervantes a ride home from the police station. During the ride home, Jones stated to Cervantes that it seemed like Cervantes wanted to admit what he had done and "come clean." (Def.12(m), Ex. 1(b) at 21; Ex. 4 at 74.) The parties dispute Cervantes' response to this statement. According to Jones' grand jury testimony given March 16, 1993, Cervantes stated: "Yes, I would like to do that. But I've got too much too [sic] lose. If I admit I killed Sally, what would my defense be?" (Id. at 21–22.) According to Cervantes' testimony at a hearing held January 24, 1994 regarding a motion to suppress, Cervantes responded to Jones by stating: "[I]f I confess to a crime that I did not commit, what would my defense be? I got too much to lose." (Def.12(m), Ex. 4 at 75.)

In February of 1993, Jones went to John A. Barsanti ("Barsanti"), Chief of the Criminal Division of the Kane County State's Attorney's Office, regarding the possibility of seeking a warrant for hair and blood samples from Cervantes in connection with the Lavergne murder investigation. Upon his independent review of the investigative reports, Barsanti concluded that there were sufficient grounds to take the matter before the grand jury and to seek an indictment of Cervantes for Lavergne's murder. (Def.12(m) ¶ 40; Pl. 12(n) ¶ 40.)

Jones testified before the grand jury after being subpoenaed by Barsanti, and Cervantes was subsequently indicted. Following the grand jury indictment, Cervantes was arrested and remained in custody from March 17, 1993 until March 7, 1996, when he was found not guilty and released.

On March 6, 1997, Cervantes filed this action alleging that Jones engaged in malicious prosecution in violation of the Fourth Amendment and Illinois law. Cervantes contends that as a result of Jones' actions, Cervantes lost wages, suffered severe emotional distress and, while incarcerated, was seriously injured by other inmates. Cervantes seeks compensatory and punitive damages.

On July 29, 1997, this Court denied Jones' motion to dismiss in which Jones argued that: (1) Cervantes had failed to state a claim for malicious prosecution; and (2) he enjoyed absolute immunity for any false tes-

---

1. Unless otherwise indicated, the following facts are not disputed.

timony given to the grand jury. *See Cervantes v. Jones,* 1997 WL 433685 (N.D.Ill. July 29, 1997). Jones now moves for summary judgment.

### SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When making such a determination, the court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Courtney v. Biosound,* 42 F.3d 414, 418 (7th Cir.1994).

### DISCUSSION

To state a claim for malicious prosecution under § 1983, a plaintiff must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty. *See Washington v. Summerville,* 127 F.3d 552, 558 (7th Cir.1997); *Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir.1996). To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: (1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendant instituted or continued the proceedings maliciously; (4) the proceedings terminated in plaintiff's favor; and (5) there was an

injury. *See Sneed v. Rybicki,* 146 F.3d 478, 481 (7th Cir.1998).

In his motion for summary judgment, Jones argues that: (1) Cervantes cannot demonstrate all of the factors necessary to state a claim for malicious prosecution under Illinois law; and (2) Jones enjoys absolute immunity for presenting any false testimony to the grand jury. This Court will address these arguments in turn.[2]

### I. Malicious Prosecution Claim

As stated, to prove a malicious prosecution claim, a plaintiff must satisfy the requirements of a state law cause of action for malicious prosecution. Jones asserts that Cervantes cannot do so here because, as a matter of law, (1) Jones did not institute or continue the proceedings maliciously and (2) there was probable cause for Cervantes to be subjected to judicial proceedings.

In order to be liable for malicious prosecution, "a defendant either must have initiated a criminal proceeding or his participation in it must have been of so active and positive a character as to amount to advice and cooperation." *Denton v. Allstate Ins. Co.,* 152 Ill.App.3d 578, 583, 105 Ill.Dec. 471, 504 N.E.2d 756, 760 (1st Dist.1986). Put another way, "[l]iability for malicious prosecution ... extends to [police officers] who played a significant role in causing the prosecution of the plaintiff[.]" *Frye v. O'Neill,* 166 Ill.App.3d 963, 975, 117 Ill.Dec. 882, 520 N.E.2d 1233, 1240 (4th Dist.1988). *See also Reed,* 77 F.3d at 1053 (plaintiff must show that the officer used improper influence on the prosecutor or made knowing misstatements to the prosecutor in order to secure prosecution); *Newsome v. James,* 968 F.Supp. 1318, 1323 (N.D.Ill.1997) (stating the issue as whether the police officer "got the ball rolling in the unwarranted prosecution" of the plaintiff).

Cervantes' action for malicious prosecution centers around the disputed conversation

**2.** Jones additionally argued that Cervantes failed to timely file his § 1983 malicious prosecution claim. "For malicious prosecution ... the cause of action does not accrue until the criminal proceedings are over." *Sneed v. Rybicki,* 146 F.3d 478, 481 (7th Cir.1998). Here, it is undisputed that the criminal proceedings ended on March 7, 1996, that Cervantes filed his Complaint on March 6, 1998 and that the statute of limitations period for malicious prosecution claims under § 1983 is two years. Therefore, the Court rejects Jones' limitations argument.

which occurred between Cervantes and Jones coming home from the police station on the morning of December 9, 1992, *i.e.*, whether Cervantes stated that he would like to confess to the Lavergne murder. (*See* Pl. Resp. at 2, 11.) [3] Upon careful review of the record here, even assuming that Jones' grand jury statements were fabrications, the Court finds that a reasonable jury could not conclude that Jones "institute[d] or continue[d] the proceedings maliciously" as defined above.

Instead, the evidence indisputably reveals that Barsanti, not Jones, instituted Cervantes' criminal proceedings. Indeed, Cervantes admits that Barsanti independently reviewed the investigative reports into the Lavergne murder and concluded that there were sufficient grounds to take the matter before the grand jury. (*See* Def. 12(*m*), Ex. 1 ¶ 3; Pl. 12(n) ¶ 40.) Additionally, Barsanti states that "[a]t no time did ... Jones ever request that an indictment be sought of James Cervantes, that decision I reached on my own." (*See* Def. 12(m), Ex. 1 ¶ 4.) And, once Barsanti initiated the prosecution, Cervantes admits that Barsanti alone made the decision to continue Cervantes' prosecution. (Def.12(m) ¶ 54; Pl. 12(n) ¶ 54.)

The evidence also discloses that Jones' alleged false statements played no role in the initiation of proceedings against Cervantes. Barsanti states that although he reviewed reports containing the allegedly false statements by Jones, "those statements did not play a role in [Barsanti's] decision to seek an indictment of James Cervantes because in [his] view, those statements were equivocal in nature." (*See* Def. 12(m), Ex. 1 ¶ ¶ 8.) Barsanti states that he would have sought an indictment of Cervantes even without those statements. (*Id.*)

In his affidavit, Barsanti provides this Court with a considerable list of facts which

he states led him to conclude that there was probable cause to prosecute Cervantes for Lavergne's murder. (*See* Def. 12(m), Ex. 1 ¶¶ 6(a)-(z)). Some of the evidence which led to Barsanti's decision, in brief, were the facts that:

- the crime scene indicated no sign of forced entry, suggesting that Lavergne knew her assailant (*id.* ¶ 6(h));

- the similar nature of a knife used in the murder and the knives in the victim's kitchen suggested that the murder was not planned (*id.* ¶ 6(e));

- interviews from family and friends suggested that Cervantes was often seen with Lavergne (*id.* ¶ 6(i)-(m));

- according to interviews with police investigators, Cervantes admitted to occasionally residing with Lavergne when he was having marital problems and having had a key to Lavergne's apartment (*id.* ¶ 6(o));

- police believed that Cervantes' initial alibi, that he was at his mother's on the day the murder occurred, was contradicted by further investigation (*id.* ¶ 6(o));

- in another police interview, a waitress stated that, after serving Lavergne and a man who fit Cervantes' description, Lavergne told the witness that the man was mad because Lavergne had told him that he could no longer use her apartment (*id.* ¶ 6(p));

- in another police interview, an acquaintance of Lavergne and Cervantes stated that, on at least one occasion, Cervantes beat Lavergne (*id.* ¶ 6(q));

- in other police interviews, a woman who had once lived with Cervantes stated that he drank heavily and had difficulty controlling his temper when he was intoxicated, and Cervantes' estranged wife stated that,

---

**3.** Cervantes' affidavit alludes to certain other allegedly inaccurate statements made by Jones to the grand jury. (*See;* Pl. 12(n), Ex. 7 ¶ 6.) Jones moves to strike this portion of Cervantes' affidavit, arguing that these contentions contradict Cervantes' prior answers to certain interrogatories. (*See* Def. Mot. to Strike at 2–4.) Although Cervantes alludes to these additional grand jury statements by Jones in his response brief (*see* Pl. Resp. at 6–7), Cervantes does not argue that these statements were fabrications which played a role in Cervantes' indictment. Instead, as stat-

ed by Cervantes, "[t]he primary disputed question is whether defendant Jones fabricated the story that plaintiff said he would 'like to confess' to Lavergne's murder" and whether that alleged fabrication caused Cervantes' injuries. (*Id.* at 11. *See also* Pl. 12(n) ¶ 56.) Because these additional statements do not form the basis for Cervantes' claim, this Court need not discuss them further, and Jones' motion to strike Cervantes' presentation of the statements is denied as moot.

on one occasion, Cervantes struck her on her face after confronting him about his drinking (*id.* ¶¶ 6(r-s));

● in another police interview and subsequently in a polygraph examination, Cervantes' girlfriend, Penny Newman, stated that Cervantes was a violent person, especially after drinking, and had struck her at least three times during their relationship (*id.* ¶ 6(v-w));

● according to a police interview on December 8, 1992, Cervantes admitted that he was smoking and drinking the night of July 19, 1992, that he had physically abused many women in the past, and that he had been romantically involved and had physically abused Lavergne in the past (*id.* ¶ 6(x));

● a polygraph examination administered by an FBI agent conducted on December 9, 1992, suggested that Cervantes' responses to questions of whether he caused Lavergne's death were indicative of deception; in an additional interview with Cervantes, the FBI agent stated that Cervantes admitted to drinking and smoking pot the day of Lavergne's murder and that he might have walked up Lavergne's residence on the evening of the murder. (*Id.* ¶ 6(y).)[4]

 Although Cervantes disputes many of these facts—and maybe properly so, in light of the fact that he was acquitted at trial—

pivotally here, Cervantes presents no evidence disputing Jones' evidence that it was Barsanti, not Jones, who initiated and continued Cervantes' prosecution. Nor does Cervantes present any evidence that Jones' alleged fabrications had any role in the initiation and continuation of Cervantes' prosecution. Thus, there is simply no evidence upon which a reasonable jury could find that Jones played a "significant role" in causing Cervantes' prosecution or otherwise actively participated in that prosecution.[5]

The case Cervantes primarily relies upon, *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir.1988), does not alter the result. In *Jones*, the plaintiff alleged that the defendant police officers arrested him without probable cause and prosecuted him despite the lack of any reasonable grounds to believe that he had committed the crimes. Evidence introduced at trial established that the police officers filed false reports and supplied false information to the state's attorney about Jones' culpability. Evidence further established that the state's attorney unwittingly relied upon those falsehoods in deciding to prosecute Jones.

The police officers in *Jones* attempted to hide behind the state's attorney's decision to prosecute Jones, arguing that all of Jones' injuries resulted from that decision rather than their misconduct. The Seventh Circuit

**4.** Parenthetically, on Cervantes' motion, the trial judge suppressed certain statements made to the FBI agent who took his polygraph upon finding that the statements were made involuntarily and in violation of Cervantes' *Miranda* rights. The trial judge additionally suppressed a statement by Cervantes to Jones as "fruit of the poisonous tree." On appeal, the appellate court affirmed the suppression of Cervantes' statement to the FBI agent, but reversed the suppression of Cervantes' statement to Jones.

**5.** Rather than present evidence on this issue, Cervantes states that he does not have "personal knowledge of conversations between Jones and Barsanti about [his] prosecution" and therefore he is "unable to agree or disagree with the contentions[.]" (Pl.12(n), Ex. 7 ¶ 9.) Cervantes requests that "[i]f these contentions are material to the motion for summary judgment, ... ruling on the motion [be] continued until [he has] had a full and fair opportunity to depose Jones and Barsanti." (*Id.*)

As Jones states, Cervantes' request is improper. If Cervantes wanted to depose Jones and Barsan-

ti before responding to Jones' summary judgment motion, he should have moved for additional discovery under Fed.R.Civ.P. 56(f), giving this Court "an adequate explanation ... of the reasons why the extension is necessary," as required under that rule. *Farmer v. Brennan*, 81 F.3d 1444, 1449 (7th Cir.1996). Cervantes did not do so. Cervantes states that he has not deposed Jones and Barsanti "to foster the climate for a reasonable settlement." (Pl. Resp. at 3.) However, settlement negotiations do not excuse a party from diligence in conducting necessary discovery. *See Sofo v. Pan-Am. Life Ins. Co.*, 13 F.3d 239, 242 (7th Cir.1994). Furthermore, it was Cervantes' responsibility, not this Court's, to determine whether deposition testimony of Jones and Barsanti was "material" and, if so, to either timely obtain the discovery or timely request an extension under Rule 56(f). Because Cervantes has not done either, this Court must rule on this motion on the record before it. *See, e.g., Anderson v. Rizza Chevrolet, Inc.*, 9 F.Supp.2d 908, 915 (N.D. Ill.1998); *Milton v. Chicago Park Dist.*, No. 96 C 6088, 1997 WL 417913, at *1 (N.D.Ill. July 23, 1997).

rejected the police officers' argument, stating that "a prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision." *Jones*, 856 F.2d at 994.

The important aspect of the *Jones* decision for purposes of this case is that the alleged fabricated evidence must "influence the decision" to indict. Thus, if Barsanti proceeded with the prosecution independent of any misinformation allegedly supplied or concealed by Jones, then Cervantes cannot establish that the alleged deceit injured him. *See Buckley v. Fitzsimmons*, 20 F.3d 789, 796–97 (7th Cir.1994) (noting that, in *Jones*, the plaintiff "alleged that the police had fabricated evidence, deceiving the prosecutor into filing criminal charges that *the prosecutor never would have initiated had he known the truth*") (emphasis added).

In considering Jones' motion to dismiss, this Court concluded that Cervantes had sufficiently alleged the type of claim recognized as actionable under *Jones*. This was because "[Cervantes'] claim, essentially, [was] that as a result of [Jones'] fabricated evidence, prosecutors filed criminal charges against [Cervantes] that they would not have otherwise initiated." *Cervantes*, 1997 WL 433685, at *4.

■ The record now clearly demonstrates, however, that this case is not analogous to *Jones*. As explained, *supra*, there is no evidence from which a jury could reasonably determine that as a result of Jones' allegedly fabricated evidence, Barsanti filed criminal charges against Cervantes that he would not have otherwise initiated. Therefore, because

Cervantes cannot, as a matter of law, demonstrate this element of the malicious prosecution case, summary judgment must be granted for Jones.[6]

## II. *Absolute Immunity*

■ As he did in his motion to dismiss, Jones additionally argues that he has absolute immunity for any false statements he made before the grand jury. As this Court explained in its earlier opinion, police officers generally possess absolute immunity from § 1983 liability for claims based on grand jury testimony. *See Cervantes*, 1997 WL 433685, at *2 (quoting *Curtis v. Bembenek*, 48 F.3d 281, 284 (7th Cir.1995)). The Court noted, however, that there is no absolute immunity for a police officer who acts as a complaining witness, *i.e.*, a party "who actively instigated or encouraged the prosecution of the plaintiff." *Id.* (quoting *Curtis*, 48 F.3d at 284 n. 5).

In ruling on Jones' motion to dismiss, this Court noted that:

> courts draw a distinction between those witnesses who played a role in initiating a prosecution and those whose role was limited to providing testimony. An officer in the former role is akin to a complaining witness and is not absolutely immune for his grand jury testimony if the testimony is relevant to the manner in which he initiated or perpetuated the prosecution of the plaintiff.

*Cervantes*, 1997 WL 433685, at *3. Accepting as true statements in Cervantes' Complaint indicating that Jones initiated a baseless prosecution against Cervantes, this Court declined to dismiss Cervantes' Complaint on this ground.

---

**6.** Jones additionally argued that Cervantes could not make out a malicious prosecution claim because there was sufficient probable cause to prosecute Cervantes without the alleged fabricated evidence. The existence of probable cause, under both Illinois and federal law, is an absolute defense to an action for malicious prosecution. *See Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir.1989); *Myatt v. City of Chicago*, 816 F.Supp. 1259, 1267 (1992); *Burghardt v. Remiyac*, 207 Ill.App.3d 402, 406, 152 Ill.Dec.

367, 565 N.E.2d 1049, 1052 (2d Dist.1991). Here, although Jones has identified a considerable list of factors which Jones alleges demonstrate that Barsanti had probable cause to indict Cervantes, *see, supra*, at pp. 889–90, it is unnecessary here, in light of the rest of this opinion, to determine as a matter of law whether there was probable cause independent of Jones' alleged fabrications for Barsanti to seek Cervantes' indictment.

Nevertheless, on the basis of the facts presented to the Court in this summary judgment motion, the Court now finds that Jones enjoys immunity for his grand jury statements. As the Seventh Circuit has remarked, "the complaining witness theory is closely associated with the common law cause of action for malicious prosecution." *Curtis,* 48 F.3d at 285. In both situations, the court seeks to determine whether the witness played a role in initiating or encouraging the prosecution.

Here, as the Court explained in the context of Cervantes' malicious prosecution claim, there is no evidence disputing Jones' contention that it was Barsanti, not Jones, who initiated Cervantes' prosecution. Barsanti independently reviewed the investigative reports and concluded, on his own, that there were sufficient grounds to take the matter before the grand jury and, upon indictment, to continue the prosecution of Cervantes. The evidence further discloses that *Barsanti selected Jones* to testify—indeed, subpoenaed Jones to testify—because of Jones' rank and familiarity with the investigation. (Def.12(m), Ex. 1 ¶ 9.) Under the factual circumstances here, Jones cannot be considered a "complaining witness," and, therefore, Jones is entitled to absolute immunity for any false statements he made before the grand jury.

## CONCLUSION

For the foregoing reasons, Jones' motion for summary judgment is granted. Jones' motion to strike Cervantes' affidavit is denied.