George WASHINGTON, Plaintiff–
Appellant,

v.

John SUMMERVILLE, Detective # 16520,
P. Foley, Detective # 12215, J. Capesius,
Detective # 11093, et al., Defendants–Ap-
pellees.

No. 96–2084.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1997.

Decided Sept. 17, 1997.

Rehearing and Suggestion for Rehearing
En Banc Denied Nov. 13, 1997.*

---

\* The Honorable Joel M. Flaum took no part in consideration of the petition for rehearing en banc.

John L. Stainthorp (argued), Chicago, IL, for Plaintiff–Appellant.

Lawrence Rosenthal (argued), Benna R. Solomon, Anne Berleman Kearney, Susan S. Sher, Office of the Corporation Counsel, Chicago, IL, for Defendants–Appellees.

Before BAUER, HARLINGTON WOOD, JR., and ROVNER, Circuit Judges.

BAUER, Circuit Judge.

Plaintiff George Washington filed an action under 42 U.S.C. § 1983 against three detectives in their individual capacities and against the City of Chicago under the doctrine of *respondeat superior.* Among the eight counts in the complaint were allegations of unlawful arrest, excessive force, and federal and state claims for malicious prosecution. The detectives and the City moved to vacate or dismiss Washington's complaint for failure to state timely and/or cognizable claims under § 1983. The district court denied Defendants' motion to vacate, dismissed six of the counts, and granted summary judgment for Defendants on the remaining two counts. Washington appealed. On appeal, Washington maintains that his claims of unlawful arrest and excessive force were timely filed and that his malicious prosecution claims should be recognized.

## Background

The district court accepted Washington's factual allegations as true for purposes of the detectives' motion to dismiss, and we do the same on appeal. *Apostol v. Landau,* 957 F.2d 339, 343 (7th Cir.1992) (citations omitted). On March 9, 1991, Detective John Summerville and another detective stopped an automobile at the intersection of Cermak Road and Fairfield Street in Chicago. Without a warrant, the detectives arrested George Washington, a passenger in the car. Summerville shoved Washington's head against the trunk of the car. After transporting Washington to Area IV Headquarters, the detectives took him to an interrogation room, where they pushed Washington's head against a wall, knocking him unconscious. The detectives then handcuffed

Washington to the wall of the interrogation room. Summerville struck Washington in the throat and demanded that Washington make an inculpatory statement. He then left the room.

According to Washington's complaint, Detective Patrick Foley told Washington that his treatment would grow steadily worse if he refused to cooperate. When Washington replied that he did not understand what Foley was talking about, Foley struck Washington across his face. Summerville then returned to the interrogation room and strongly suggested that Washington should tell an Assistant State's Attorney about his involvement in a murder. When Washington again stated that he did not know what the detective was talking about, Summerville kicked Washington in the groin. Washington's complaint also accused Detective James Capesius of making similar threats if Washington failed to cooperate.

After Summerville repeatedly struck him in the ribs with a flashlight, Washington made some inculpatory statements concerning the murder. Washington then repeated his statements to Assistant State's Attorney ("ASA") Michael Cawley.

On April 5, 1991, Washington was indicted for first degree murder in Illinois state court. On November 8, 1991, Washington filed a motion to suppress his statements on the ground that they were coerced by the detectives' excessive force. The court denied the motion. Washington filed two subsequent motions for reconsideration and/or rehearing on the motion to suppress, both of which the trial court denied.

On October 6, 1993, Washington filed a third motion for reconsideration and/or rehearing. After reading newspaper stories about Summerville's alleged drug use and other criminal activity, the court decided to reopen and hold a hearing on Washington's motion. The court was informed that Summerville would invoke his Fifth Amendment privilege against self-incrimination in response to any inquiries about his reported drug use. The court concluded that Washington was entitled to cross examine Summerville on his drug use and that it had no other choice but to grant Washington's motion and suppress his statements. Washington was released from custody on May 23, 1994 after the court granted the State's Attorney's *nolle prosequi* motion.

On January 12, 1994, Washington filed a *pro se* complaint and a motion for leave to proceed *in forma pauperis* in the Northern District of Illinois, Eastern Division. In his complaint, Washington alleged various claims of excessive force and failure to protect under 42 U.S.C. § 1983. He named Cook County State's Attorney Jack O'Malley, ASA Cawley, Det. Summerville, Det. Foley, Det. Capesius, the Chicago Police Department, and the Cook County State's Attorney's Office as defendants. Summerville, Foley, and Capesius were never served with the complaint.

On April 29, 1994, Judge Ann Claire Williams gave Washington until May 10, 1994 to show cause why his complaint should not be dismissed because it was filed after the statute of limitations had run. On June 9, 1994, upon receiving no response from Washington, Judge Williams denied Washington's motion for leave to proceed *in forma pauperis* and dismissed his complaint as untimely.

On February 27, 1995, Washington filed a motion to vacate the June 9, 1994 order. Judge Williams granted Washington's motion and allowed him to file an amended complaint. Washington filed an eight-count amended complaint on March 9, 1995, naming Detectives Summerville, Foley, and Capesius in their individual capacities and the City of Chicago under *respondeat superior*. The detectives and the City moved to vacate or dismiss Washington's first amended complaint. The district court (Judge George M. Marovich)[1] denied Defendants' motion to vacate, dismissed Counts I, II, IV, V, VII and VIII of Washington's first amended complaint, and granted summary judgment in

---

1. On February 23, 1996, Judge Williams entered an order reassigning this case to Judge Maro- vich.

favor of Defendants on Counts III and VI.[2] Washington filed a notice of appeal on May 1, 1996.

On appeal, Washington contends that his allegations of unlawful arrest and unreasonable force were timely filed. Washington also argues that he pleaded cognizable state and federal claims for malicious prosecution.

## Analysis

### A. The *Heck v. Humphrey* Hubbub

■■■ We review *de novo* a district court's 12(b)(6) dismissal. *Porter v. DiBlasio,* 93 F.3d 301, 305 (7th Cir.1996). We accept as true all facts alleged in the complaint and draw all reasonable inferences from them in the plaintiff's favor. *Apostol v. Landau,* 957 F.2d 339, 343 (7th Cir.1992) (citations omitted). We will affirm the dismissal of a complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir.1997) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)).

Washington argues that the district court should not have dismissed his § 1983 claims of unlawful arrest and excessive force as untimely. He believes that, under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), his cause of action did not arise, and hence the statute of limitations on these claims did not begin to run, until the criminal proceedings against him had terminated because success on either of his claims would have undermined the validity of Washington's possible conviction.

■■ There is a two-year statute of limitations for § 1983 claims arising in Illinois. *Booker v. Ward,* 94 F.3d 1052, 1056 (7th Cir.1996) (citation omitted). To determine when Washington's § 1983 claim accrued, we look to *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and our own subsequent case of *Booker v. Ward.* In

*Heck,* the Court held that a plaintiff seeking damages for an allegedly unconstitutional conviction or imprisonment, or for other harms caused by unlawful actions that would render a conviction or sentence invalid, has no § 1983 cause of action until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. *Heck,* 512 U.S. at 486–88, 114 S.Ct. at 2372–73. That is, if a judgment for the plaintiff "would necessarily imply the invalidity of his conviction or sentence," the plaintiff's § 1983 cause of action does not arise, and the statute of limitations on the action does not begin to run, until or unless the plaintiff's conviction or sentence has been held invalid. *Id.* at 487, 114 S.Ct. at 2372–73. Conversely, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff," his § 1983 cause of action arises, and the statute of limitations on the action begins to run, when the plaintiff knows or should have known that his constitutional rights have been violated. *Id.*

In *Heck,* the Court did not explicitly address claims, which, if successful, would necessarily imply the invalidity of a *potential* conviction on a pending criminal charge. However, in *Smith v. Holtz,* 87 F.3d 108, 112–13 (3d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996), the Third Circuit discussed this issue, which Washington posits before us. In *Smith,* Smith alleged that the defendants suppressed exculpatory evidence and contrived inculpatory evidence, and he sought damages from his unlawful conviction and confinement. *Id.* at 112. As a preliminary matter, the Third Circuit found that if Smith had brought his allegations before September 18, 1992, when the Pennsylvania Supreme Court ordered that the charges against him be dismissed, success on these claims would have necessarily implied the invalidity of any future conviction on the still pending criminal charges. *Id.*

---

**2.** The district court converted Defendants' motion to dismiss into a motion for summary judgment as to Counts III and Count VI (Washington's federal and state malicious prosecution claims, respectively) because documents outside

the pleadings, including hearing transcripts, were discussed by both parties in their various briefs and were required for the district court's consideration of Defendants' motion with respect to Counts III and VI.

The Third Circuit went on to note that many of the concerns noted in *Heck* apply equally to claims that, if successful, would necessarily imply the invalidity of a future conviction on a pending charge. *Id.* at 113. Specifically, it found that

[i]f such a claim could proceed while criminal proceedings are ongoing, there would be a potential for inconsistent determinations in the civil and criminal cases and the criminal defendant would be able to collaterally attack the prosecution in a civil suit. In terms of the conflicts which *Heck* sought to avoid, there is no difference between a conviction which is *outstanding* at the time the civil rights action is instituted and a *potential* conviction on a pending charge that may be entered at some point thereafter.

Because of these concerns, we hold that a claim that, if successful, would necessarily imply the invalidity of a conviction on a pending criminal charge is not cognizable under § 1983. It necessarily follows that so long as success on such a claim would necessarily imply the invalidity of a conviction in the pending criminal prosecution, such a claim does not accrue so long as the potential for a judgment in the pending criminal prosecution continues to exist. This did not occur in Smith's case until the Pennsylvania Supreme Court ordered the charges dismissed on September 18, 1992. Smith's claims thus did not accrue before that date and, since he filed those claims within two years thereafter, they are not time barred.

*Id.* (internal citation omitted).

█ *Smith* instructs that we must ask initially whether Washington's unlawful arrest and excessive force claims, if successful, would necessarily imply the invalidity of a potential conviction on the murder charge against him. If success on these claims would have necessarily implied the invalidity of a potential conviction on the murder charge, then Washington's claims did not accrue until the day on which the murder charge was dismissed; in which case, his claims were timely filed within the two-year statute of limitations period. If success on these claims would not have necessarily im-

plied the invalidity of a potential conviction on the murder charge, then Washington's claims accrued on the day of his arrest, and his claims are therefore time-barred.

*Booker v. Ward,* 94 F.3d 1052 (7th Cir. 1996), tells us that Washington's claims, even if successful, will not undermine the validity of a potential conviction for murder. Like Washington argues here concerning his potential conviction, Booker contended that success on his unlawful arrest claim would have implied the invalidity of his conviction, and that, therefore, under *Heck,* he could not have brought his claim until the trial court vacated his conviction. *Id.* at 1056. We disagreed and concluded that a wrongful arrest claim, like many Fourth Amendment claims, does not inevitably undermine a conviction because a plaintiff can wage a successful wrongful arrest claim and still have a perfectly valid conviction. *Id.* (citations omitted).

Washington's additional claim of excessive force does little to distinguish his case from Booker's, because excessive force claims are likewise analyzed under the rubric of the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or an investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures.'"); *see also Lanigan v. Village of East Hazel Crest, Ill.,* 110 F.3d 467, 474 (7th Cir.1997).

Washington's success on either his unlawful arrest or excessive force claim would not have necessarily implied the invalidity of a potential conviction on the murder charge against him. Accordingly, the statute of limitations on Washington's claims began to run when he knew or should have known that his constitutional rights had been violated—the date of his arrest, March 9, 1991. *See Perez v. Sifel,* 57 F.3d 503, 505 (7th Cir.1995); *Wilson v. Giesen,* 956 F.2d 738, 740 (7th Cir.1992); *see also Heck,* 512 U.S. at 487 n. 7, 114 S.Ct. at 2373 n. 7. Washington initially brought his claims on January 12, 1994.

Washington's claims are therefore time-barred, as he did not bring them within Illinois' two-year statutory period for § 1983 actions.

## B. The Viability of Washington's Malicious Prosecution Claims

Because the district court converted the detectives' motion to dismiss into a motion for summary judgment as to both of Washington's malicious prosecution claims, we use its standard of review. We review the district court's grant of summary judgment *de novo*. *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 299 (7th Cir.1996) (citation omitted). In deciding whether any genuine issues of material fact exist, we view the record and extract all reasonable inferences from it in the light most favorable to the nonmoving party. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). The applicable substantive law will dictate which facts are material. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). Only disputes that could affect the outcome of the suit under governing law will preclude an entry of judgment. *Id.*

### 1. *Washington's Claim of Malicious Prosecution Under Illinois Law.*

 Washington contends that the district court erred when it determined that he had not presented sufficient evidence of malicious prosecution under Illinois law to survive summary judgment. To state a claim for malicious prosecution under Illinois law, the plaintiff must allege that: (1) the defendant commenced or continued an original criminal or civil proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) the defendant instituted the proceeding without probable cause; (4) the defendant acted maliciously in initiating or continuing the proceeding; and (5) the plaintiff was injured. *Curtis v. Bembenek*, 48 F.3d 281, 286 (7th Cir.1995) (citations omitted); *Swick v. Liautaud*, 169 Ill.2d 504, 215 Ill.Dec. 98, 102, 662 N.E.2d 1238, 1242 (1996) (citations omitted). All of these elements must be present for the plaintiff to pursue a claim. *Swick*, 215 Ill. Dec. at 102, 662 N.E.2d at 1242 (citations omitted). In order to fulfill the second element, a plaintiff cannot predicate his malicious prosecution action on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused. *Id.* (citations omitted).

 The issue before us is whether the *nolle prosequi* of a criminal charge constitutes a favorable termination in a malicious prosecution action. A *nolle prosequi* is not a final disposition of a case but is a procedure which restores the matter to the same state which existed before the Government initiated the prosecution. *Id.* (citations omitted). In the civil malicious prosecution context, the majority rule is that a criminal proceeding has been terminated in favor of the defendant when a prosecutor formally abandons the proceedings via a *nolle prosequi*, unless he abandons the prosecution for reasons not indicative of the defendant's innocence. *Id.* at 102–03, 662 N.E.2d at 1242–43 (citations omitted). The abandonment of the proceedings does not indicate the innocence of the accused when the *nolle prosequi* results from: an agreement or compromise with the accused; misconduct on the part of the accused in order to prevent trial; or the impossibility or impracticability of having the accused tried. *Id.* at 103, 662 N.E.2d at 1243 (citing *Restatement (Second) of Torts* §§ 660, 661 (1970)).

 The plaintiff has the burden of proving a favorable termination. *Id.* (citation omitted). The plaintiff meets his burden of proof only when he establishes that the *nolle prosequi* was entered for reasons consistent with his innocence. *Id.* The circumstances surrounding the cessation of the criminal proceedings must compel an inference that reasonable grounds to pursue the criminal prosecution were lacking. *Id.* (citation omitted). The Illinois Supreme Court has warned that "[o]therwise, every time criminal charges are nol-prossed, a civil malicious prosecution action could result." *Id.*

In *Swick*, Swick alleged in his complaint that the *nolle prosequi* was entered because of a lack of evidence pointing to his guilt. The defendants answered with a denial of

Swick's allegation. The *nolle prosequi* order did not reflect the reasons for its entry. It merely stated, "m/s nolle pros per Gary Johnson [presumably the ASA on the case] instruction recall warrants" and was signed by the trial judge. At trial, the police lieutenant who investigated the charges that the defendants brought against Swick testified about the *nolle prosequi*, but he did not state any reasons for its entry. Because of the lack of evidence at trial regarding the reasons for the *nolle prosequi* order, the court found that Swick had failed to meet his burden. *Id.* It concluded, "The bare use of the *nolle prosequi* order, which did not state its reasons for its entry, did not establish that the criminal proceedings were terminated in a manner consistent with Swick's innocence." *Id.*

Similarly, in this case, Washington alleged that "Summerville, Capesius, and Foley individually and/or jointly and in conspiracy, initiated and continued a malicious prosecution, without probable cause, against plaintiff. Said prosecution was ultimately determined in plaintiff's favor." In their motion to vacate or dismiss Washington's first amended complaint, the detectives responded that Washington could not "establish a termination of the state court proceedings in his favor indicative of innocence." Like *Swick*, we have an assertion by Washington that the dismissal of his case was indicative of his innocence, and we have a denial by the detectives. We also have a case where the order itself does not elucidate the reasons for its entry. It merely states, "m/s Nolle Prosse DDT." Roughly translated, the order noted that the State made a *nolle prosequi* motion and that the defendant demanded trial.

We have the benefit of evidence other than the pleadings to which both parties refer in support of their positions. Unfortunately for Washington, the evidence from the state court transcripts flies in the face of his position. After finding Washington's testimony that his statements were coerced to be unbelievable, the trial court first denied Washington's motion to suppress on July 12, 1993. The trial judge denied Washington's two subsequent motions for reconsideration and/or rehearing. After Washington's third motion, the trial judge found that information in Summerville's medical records called for the reopening of Washington's motion to suppress and for a hearing on the issue of Summerville's credibility. When the court learned that Summerville would exercise his Fifth Amendment privilege if called to testify, it stated:

> Given the Court's findings that there is relevant inquiry that the Defendant in this case is entitled to inquire into and the fact that the witness refuses to testify pursuant to his own constitutional rights, the Court has no choice, therefore, but to grant the motion to suppress the statements.

Washington failed to bring forth sufficient evidence to withstand summary judgment. A bare nolle prosse without more is not indicative of innocence. Lack of a recorded reason for the nolle prosequi offers no insight as to the validity or invalidity of Washington's position, and the trial transcript flat out disfavors his contention. Accordingly, we affirm the district court's decision to grant the detectives' motion for summary judgment.

### 2. The 42 U.S.C. § 1983 Claim

Title 42 U.S.C. § 1983 creates a federal cause of action for "the deprivation, under color of state law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir.1997) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S.Ct. 2068, 2082–83, 129 L.Ed.2d 93 (1994)). In any § 1983 analysis, we first have to pinpoint the specific constitutional right that was allegedly violated. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989)). *Albright v. Oliver* instructs that the only constitutional amendment that is implicated by a malicious prosecution claim is the Fourth Amendment. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811–12, 127 L.Ed.2d 114 (1994); *Reed v. City of Chicago*, 77 F.3d 1049, 1052 (7th Cir.1996). To state a claim for malicious prosecution under § 1983, a plaintiff must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of

liberty. *Reed,* 77 F.3d at 1051 (citing *Smart v. Board of Trustees of University of Ill.,* 34 F.3d 432, 434 (7th Cir.1994), *cert. denied,* 513 U.S. 1129, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995)).

Washington claims that he has a cognizable federal claim for malicious prosecution. He argues that under *Reed, both* his state and federal claims of malicious prosecution should have survived summary judgment because he provided sufficient evidence of malicious prosecution under *Illinois* law. We disagree.

 We have already found that Washington has not satisfied the requirements of a state law cause of action for malicious prosecution. Washington's federal claim must fail as well, since he has not met the first element of a federal malicious prosecution claim. We also caution against Washington's reading of *Reed.* A state law cause of action for malicious prosecution is not interchangeable with a federal action, for underlying any § 1983 claim is a constitutional violation. A plaintiff bringing a federal malicious prosecution claim must first clear the preliminary hurdle of stating a cognizable constitutional violation before his § 1983 action can go forward. We recall that the Supreme Court has stated that there is no remedy under § 1983 for an abuse of state power that does not in fact violate federal law. *See Collins v. City of Harker Heights,* 503 U.S. 115, 119, 112 S.Ct. 1061, 1065, 117 L.Ed.2d 261 (1992) (citations omitted).

In this case, even if Washington had met the specific requirements for a federal malicious prosecution claim, he has not alleged a cognizable violation of federal law. Washington's case is virtually identical to that which was dismissed in *Reed v. City of Chicago.* There we asked whether Reed should be allowed to shoehorn a wrongful arrest claim into a malicious prosecution claim in order to avoid a successful statute of limitations' defense. *Reed,* 77 F.3d at 1051. *Reed* alleged that the defendant detectives deprived him of his right to be free from unlawful arrest, unreasonable search and seizure, wrongful confinement and detention, and malicious prosecution as well as a pendent state law claim for malicious prosecution. *Id.* at 1050.

Washington's attempts to distinguish his case from Reed's are in vain. He argues that in *Reed,* we found it significant that Reed had alleged only that the defendant detectives "testified," not that they testified falsely. *See Reed,* 77 F.3d at 1053. Washington is correct that he alleged more than Reed. In Count IV of his first amended complaint, Washington alleged that the detectives and other unnamed detectives and police supervisory personnel conspired to fill out false and incomplete statements and reports and to use these illegally obtained statements to charge, imprison, and prosecute Washington. Washington further alleged that the detectives conspired to give false testimony at the grand jury and at his motion to suppress hearing and to conceal all of this misconduct.

However, these allegations go to the heart of Washington's illegal arrest and excessive force claims. Washington alleged that the defendant detectives did not note his illegal arrest and coerced confession in their reports and that these reports were used to bring charges against Washington. Washington also accused the detectives of giving false testimony because they failed to mention Washington's unlawful arrest and his coerced confession. Moreover, these allegations are not part of Washington's unlawful arrest, excessive force and malicious prosecution claims. Rather, they are mentioned in a conspiracy count which the district court dismissed because the alleged conspiratorial acts were either time-barred or subject to the detectives' absolute immunity. Washington does not contest the dismissal of the conspiracy count on appeal.

Washington's reliance on a malicious prosecution claim against the detectives is misplaced. In her concurrence in *Albright v. Oliver,* Justice Ginsburg explained that a malicious prosecution claim against police officers is an anomaly. 510 U.S. 266, 279 n. 5, 114 S.Ct. 807, 816 n. 5, 127 L.Ed.2d 114 (1994) (Ginsburg, J., concurring). She reasoned that the principal player in carrying out a prosecution is not the police officer, but the prosecutor. *Id.* The detectives' role in this case was in effectuating and maintaining a seizure, not in initiating and pursuing a

criminal prosecution.[3] In his amended complaint, Washington never named ASA Cawley, the person responsible for bringing charges against him, as a defendant. Washington has only refashioned his false arrest and excessive force claims under the guise of a federal malicious prosecution claim. We have already held that those claims accrued at the time of Washington's arrest and that they are, therefore, untimely.

## Conclusion

George Washington's claims are either time-barred or simply not viable. We therefore AFFIRM the judgment of the district court.

**ILANA DIAMOND ROVNER, Circuit Judge, concurring in part, and dissenting in part.**

I agree that Washington's unlawful arrest and excessive force claims are barred by Illinois' two-year statute of limitations, and I therefore concur in that portion of the court's opinion. I respectfully dissent, however, from the majority's decision to affirm the dismissal of Washington's malicious prosecution claims. In my view, the district court's judgment on those claims should be reversed and the claims remanded for trial.

The majority's conclusion about Washington's section 1983 malicious prosecution claim relies on what I believe to be a misguided interpretation of Justice Ginsburg's concurring opinion in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). (*See ante* at 559.) Just as the court did in *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir.1996), the majority today highlights a footnote to Justice Ginsburg's concurrence which indicates that a malicious prosecution claim against a police officer is "anomalous" because prosecutors and not police officers initiate criminal proceedings. *See Albright,*

510 U.S. at 279 n. 5, 114 S.Ct. at 816 n. 2 (Ginsburg, J., concurring). Yet my colleagues lose sight of the fact that despite that footnote, Justice Ginsburg would recognize a malicious prosecution-type claim against a police officer when the plaintiff alleges, as Washington did here, that the officer perpetuated the initial Fourth Amendment "seizure" by providing false or misleading testimony in the proceedings against the defendant. *Id.* at 280–81, 114 S.Ct. at 816–17 (Ginsburg, J., concurring); *see also Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir.1997).

In that sense, despite the majority's contrary pronouncement, this case is easily distinguished from *Reed.* (*Cf. ante* at 559 ("Washington's case is virtually identical to that which was dismissed in *Reed.*").) There, the panel emphasized that the allegations supporting Reed's malicious prosecution claim were not sufficiently distinct from the allegations in his time-barred unlawful arrest and detention claims because Reed did not allege that the defendant police officers had committed any further unlawful act. Reed did not allege, for example, that the officers had testified untruthfully at subsequent hearings; he merely alleged that the officers had "testified." 77 F.3d at 1053, 1054 ("There is no allegation that the detectives covered up exculpatory evidence or testified untruthfully."). Here, however, Washington met the very objection raised by the panel in *Reed*— he alleged that even after his unlawful arrest, the defendant officers coerced a false inculpatory statement from him through their use of excessive force, fabricated evidence against him, prepared false reports, and then attempted to cover up their misdeeds by testifying falsely in subsequent hearings, including the hearing on Washington's motion to suppress his allegedly coerced confession. It is therefore simply not correct to say that the allegations here are "virtually identical"

---

**3.** Although Justice Ginsburg found malicious prosecution suits against police officers an anomaly, she went on to state that a malicious prosecution claim could be found under the Fourth Amendment in that a defendant remains seized for trial so long as he is obligated to appear in court and answer the State's charges. *See Albright*, 510 U.S. at 279, 114 S.Ct. at 816. The concept of a "continuing seizure" would no

doubt change when a cause of action would accrue. The limitations' period would not begin to run until the accused was released from custody. This Circuit, however, has rejected the concept of a continuing seizure. *See, e.g., Reed*, 77 F.3d at 1052 n. 3; *Wilkins v. May*, 872 F.2d 190, 193 (7th Cir.1989), *cert. denied*, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990).

to those in *Reed*. (*Cf. ante* at 559.) Rather, it is clear that Washington alleged "knowing misstatements made by the officers to the prosecutor," as the panel required in *Reed*. *See* 77 F.3d at 1053; *see also Curtis v. Bembenek*, 48 F.3d 281, 286 (7th Cir.1995) (implying that similar allegations would be sufficient to state a claim for malicious prosecution against a police officer under section 1983).

Once the underbrush is cleared away, it appears that the majority's rejection of Washington's malicious prosecution claim results principally from the fact that certain of the allegations supporting that claim were first made in Washington's time-barred unlawful arrest and excessive force claims. (*See ante* at 560 ("Washington has only refashioned his false arrest and excessive force claims under the guise of a federal malicious prosecution claim.").) But as I have just demonstrated, Washington's allegations in the current claim go much further than the allegations in those time-barred claims, and indeed, they meet the objections that Judge Bauer himself raised to a similar claim in *Reed*. Those allegations also are plainly sufficient to state a claim under Justice Ginsburg's concurrence in *Albright*. *See* 510 U.S. at 280–81, 114 S.Ct. at 816 (Ginsburg, J., concurring). At bottom, then, it seems to me that the majority must be saying that a malicious prosecution claim may never lie against a police officer when that claim is based in part on allegations common to a false arrest or excessive force claim. I find that to be a rather astonishing rule of law, and one that directly contradicts the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(a) ("Relief in the alternative or of several different types may be demanded."). The simple fact that Washington's unlawful arrest and excessive force claims are time-barred does not prevent him from going forward with the malicious prosecution claim alleged here under section 1983.

In addition to the constitutional problem, the majority also believes that Washington failed to satisfy the state-law requirement that the earlier criminal proceeding be terminated in his favor. *See Swick v. Liautaud*, 169 Ill.2d 504, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1242 (1996) (setting out elements of a malicious prosecution claim under Illinois law). Again, I am unable to agree.

In *Swick*, the Illinois Supreme Court followed the majority rule that the abandonment of a criminal proceeding via a nolle prosequi motion generally will be considered a termination in favor of the accused "unless the abandonment is for reasons not indicative of the innocence of the accused." *Id.* at 102–03, 662 N.E.2d at 1242–43. That court then provided the following examples of when such an abandonment is not indicative of the accused's innocence: "when the nolle prosequi is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Id.* at 103, 662 N.E.2d at 1243. The present case falls into none of these categories. Instead, I think it safe to assume that once the state trial judge suppressed Washington's allegedly coerced confession, the prosecutor filed a nolle prosequi motion because at that point, he lacked sufficient evidence to pursue the murder charge. Indeed, the defendants have come forward with no other reason for the motion, nor have they suggested that the prosecutor had any evidence implicating Washington in the murder other than the allegedly coerced confession. In this case, then, I have no doubt that the circumstances surrounding the nolle prosequi motion "compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Swick*, 215 Ill.Dec. at 103, 662 N.E.2d at 1243. There simply is no other viable explanation for the motion here.

My colleagues nonetheless are of the view that the circumstances leading up to the grant of the suppression motion suggest Washington's guilt rather than his innocence, as they assert that "the evidence from the state court transcripts flies in the face of [Washington's] position." (*Ante* at 558.) To support that assertion, the majority points out that after the original suppression hearing, the state trial judge chose to credit the police officers' testimony while finding Wash-

ington's story incredible. My colleagues emphasize, moreover, that it was only after Officer Summerville chose to exercise his Fifth Amendment privilege that the motion to suppress was granted. (*Id.*) I take it from this discussion that the majority must believe that Summerville's invocation of his Fifth Amendment privilege had no impact on the state trial judge's earlier credibility determinations, which my colleagues find indicative of Washington's guilt. But the state trial court obviously thought otherwise because it granted the motion to suppress once Summerville notified the court that he would refuse to answer questions the court found critical to his credibility, questions specifically relating to a twenty-two count indictment returned against Summerville, which included charges of official misconduct and sexual assault, and to reports that Summerville had been receiving treatment for substance abuse. To illustrate the nature of the trial court's concern, I excerpt below a portion of the court's ruling upon reopening the suppression issue:

> THE COURT: Just so I am clear and my recollection is refreshed, the statement in this case that is subject to litigation [*i.e.*, Washington's confession] was taken by the detective [Summerville], is that correct, originally?
>
> [PROSECUTOR]: Originally, yes.
>
> THE COURT: There were no other officers present at the time of the statement, is that correct?
>
> [PROSECUTOR]: Yes.
>
> \* \* \* \* \* \*
>
> THE COURT: [S]o the Court spent time late yesterday afternoon reviewing [Summerville's medical] records. And it is the Court's determination that with all the competing interests involved here that the records will not be tendered. But I will inform the defense that they do provide information sufficient to warrant cross-examination of the witness in the areas that had previously been indicated, which puts us in a situation wherein the motion to reopen the motion to suppress, therefore, is granted.... Given the Court's findings that there is relevant inquiry that the defendant in this case is entitled to inquire into and the fact that the witness refuses to testify pursuant to his own constitutional rights, the Court has no choice, therefore, but to grant the motion to suppress the statements. So that will be granted.

(R. 29, Ex. 11, at 4–7.)

It is apparent from this excerpt that the court's earlier credibility determinations, made without the benefit of cross-examination on these highly pertinent matters, do not withstand the later decision to suppress Washington's confession. And on the heels of that suppression order came the prosecutor's decision to dismiss the case via his nolle prosequi motion. The obvious inference to be drawn from these circumstances is that without the confession, the prosecutor had no reasonable grounds to pursue the charge against Washington. On defendants' motion for summary judgment, where the evidence must be viewed in a light most favorable to Washington (not to the defendants), that is the only permissible inference. The dismissal in these circumstances thus was clearly consistent with Washington's innocence.[1]

---

1. I must add a word as well about the majority's statement that Washington failed to satisfy his burden on summary judgment because he came forward with no evidence of the reason for the dismissal other than the bare nolle prosequi order itself. (*Ante* at 558.) What the majority ignores, however, is that defendants' motion did not put Washington to his proof on that issue. Initially, it is important to emphasize that defendants' motion was one to dismiss under Rule 12(b)(6), which the district court then converted to a summary judgment motion because the parties had relied on state court records that were outside the federal pleadings. Significantly, because they essentially were moving to dismiss, the defendants never argued that the nolle prosequi motion was filed by the prosecutor for any reason other than the lack of evidence on which to proceed once Washington's confession was suppressed. Instead, defendants made a legal argument that did not address the reason for the nolle prosequi motion at all; they argued that because the motion to suppress was granted on "technical" grounds, the subsequent dismissal was not indicative of Washington's innocence. (*See* R. 28, at 9–11; *see also* R. 27, at 10–13.) The district court accepted that legal argument (R. 32, at 12–15), but my colleagues quite rightly have not. Instead, they have found that Washington failed to satisfy a burden that he never

For these reasons, I would reverse the dismissal of Washington's malicious prosecution claims and remand those claims to the district court for trial. From the majority's refusal to do so, I respectfully dissent.

had under the circumstances, based upon an argument that the defendants never made.