**Joseph IENCO, Plaintiff,**

v.

**CITY OF CHICAGO, a municipal corporation, P.O. Kenneth Angarone, individually and in his official capacity as a member of the Chicago Police Department, and P.O. Thomas McGann, individually and in his official capacity as a member of the Chicago Police Department, Defendants.**

**No. 00 C 3831.**

United States District Court, N.D. Illinois, Eastern Division.

May 2, 2001.

Jeffrey Neal Cole, Cole & Staes, Ltd., Chicago, Jon L. Norinsberg, Law Office of Jon L. Norinsberg, New York City, for Joseph P Ienco, plaintiffs.

Aimee B. Anderson, Allen Duarte, City of Chicago, Department of Law, Mara Stacy Georges, Corporation Counsel, City of Chicago, Eileen Ellen Rosen, City of Chicago, Law Department, Corporation Counsel, Joseph M. Polick, M. David Weisman, City of Chicago, Department of Law, Chicago, for City of Chicago, the, a municipal corporation Kenneth Angarone, P.O., individually and in his official capacity as a member of the Chicago Police Department, Thomas McGann, P.O., individually and in his official capacity as a member of the Chicago Police Department, defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Joseph Ienco filed this lawsuit under 42 U.S.C. § 1983, claiming that the City of Chicago and Police Officers Keith Angarone and Thomas McGann violated Ienco's civil rights by subjecting him to malicious prosecution. Ienco also asserts unspecified violations of his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, and a pendent state law claim of malicious prosecution.[1] Defendants moved for summary judgment on all claims pursuant to Fed.R.Civ.P. 56, on the grounds that Ienco failed to state either a federal or state law claim for malicious prosecution and that Ienco's other claims are either time-barred or unsupported by the alleged facts. For the reasons stated below, we grant Defendants' motion for summary judgment on all claims.

## RELEVANT FACTS

In August 1994, Ienco and Gregory Iovine, a business associate of Ienco's, traveled from New York to Chicago to meet with Jerome Greenberg. They did so at

---

1. Ienco failed to develop any of his claims under the First, Fourth, Fifth, or Eighth Amendments in his responsive pleadings, and later withdrew "such claims [under the First, Fifth, and Eighth Amendments] as being outside the scope of a malicious prosecution claim." (R. 13, Pl.'s Mem. in Opp'n to Def. City of Chicago's Mot. to Dismiss at 17 n. 5.) Therefore, we find that he has abandoned and waived these claims. Moreover, the Court independently finds that Ienco could not have sustained any of these constitutional claims had he pursued them.

the request of a third party to whom Greenberg allegedly owed a business debt. According to Iovine, he and Ienco traveled by Amtrak train because train stations, unlike airports, do not have metal detectors. This was important because Ienco and Iovine carried a .357 magnum revolver, a .380 caliber semiautomatic pistol equipped with a silencer, forty-five rounds of ammunition for the guns, and one pound of explosive powder along with fuses and other components reportedly suitable for use in constructing a pipe bomb.

On August 29, 1994, Ienco and Iovine twice sought to meet with Greenberg, both times without an appointment and without Greenberg's permission to enter his office. On their first attempt, they succeeded in entering Greenberg's office and recommended that he repay the alleged debt. Greenberg requested that the two leave his office and said if they did not he would call the police. Ienco and Iovine left Greenberg's office, telling him that he would see them again. (R. 17, Defs.' 56.1(a)(3) Statement of Facts, Tab I, Indictment at 4, ¶ 8.)

On Ienco and Iovine's second attempt to meet with him, Greenberg spotted them on the building's closed-circuit television security system and had his secretary call the police. Officers Angarone and McGann responded to the call. Angarone and McGann stopped Ienco and Iovine outside the building, searched them, and detained the two men by placing them in the back of the squad car while the officers investigated the incident.

The parties differ as to the timing of this event. Ienco states that he and Iovine were detained by the police immediately upon the officers' arrival at the building,

before the officers had any information linking them to the reported disturbance within the building. The police officers contend that they first conferred with a witness who identified Ienco and Iovine and then detained them when they exited the building. Both sides agree that Ienco and Iovine remained in the back of the squad car for approximately one-half hour while the officers conferred with Greenberg.

During that half-hour, the officers interviewed Greenberg and another witness, and Greenberg signed a complaint alleging criminal trespass against Ienco and Iovine. The police officers then informed the two men that they were under arrest and drove them to the police station.

The police officers later returned to the scene of the arrest to look for a rental car that matched a set of keys the officers acquired from Ienco.[2] They located the car and searched it, finding a briefcase containing the two firearms. Both guns were loaded. The explosives were found during a search of Ienco's hotel room on August 30, 1994.

The police officers filed a report of the arrest, and, on August 31, turned the investigation over to a Special Agent of the Federal Bureau of Investigation. The Special Agent filed a federal complaint, and in October a federal grand jury was convened. The grand jury eventually indicted Ienco and Iovine on five counts of violating federal law.

Ienco and Iovine moved to suppress various pieces of evidence found subsequent to their arrest, including the firearms, the explosives, and a post-arrest statement by Iovine. The motion was denied, and Iov-

---

**2.** The police officers allege that they found the car keys hidden in the back of the squad car. Ienco, however, alleges that the police officers confiscated the car keys at the time they searched him. Iovine reportedly had told the officers that he and Ienco had taken a taxi to Greenberg's office.

ine subsequently entered into a plea agreement with the government. Ienco elected to proceed to trial and was convicted of five counts of violating federal law, including conspiracy to commit extortion, interstate travel in aid of racketeering, and using or carrying firearms during and in relation to a crime of violence.

Ienco appealed both his criminal conviction and the denial of his motion to suppress evidence. The Court of Appeals found errors at both the suppression hearing and at trial. The critical question at the suppression hearing, the Court of Appeals found, was whether the officers had probable cause to arrest Ienco and Iovine at the moment they placed them in the squad car because their detention in the car was tantamount to an arrest. Ienco and the officers told different versions of the events leading up to that moment. If the court accepted the officers' version, the arrest was valid and the subsequently-recovered evidence was admissible. On the other hand, if Ienco's version was believed, the arrest was without probable cause and the evidence acquired as a result of that arrest would then be inadmissible "fruit of the poisoned tree." *See Wong Sun v. United States*, 371 U.S. 471, 484–86, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Ingrao*, 897 F.2d 860, 866 (7th Cir.1990).

At the suppression hearing, Ienco's attorney called a witness who previously had given deposition testimony that tended to corroborate Ienco's version of the arrest. On direct examination, that witness instead said that she had been distracted by a telephone call and had not actually seen the early stages of the incident. The attorney attempted to treat this witness as adverse and impeach her by using leading questions, a technique that was proper under Fed.R.Evid. 607. The trial judge, nevertheless, sustained the government's ob-

jection to this technique and sanctioned Ienco's attorney by striking all of the witness's testimony. The Court of Appeals found this was prejudicial error because the successful impeachment of the witness's testimony might have persuaded the trial court to accept Ienco's version of the arrest. The Court of Appeals therefore ordered a new suppression hearing and directed the trial court to determine at that hearing "whether Ienco or the officer is believed." *United States v. Ienco*, 92 F.3d 564, 569 (7th Cir.1996).

Turning its attention to Ienco's trial, the Court of Appeals found that there were two errors in the jury instructions, which combined to constitute prejudicial error. First, the Court of Appeals found that the instruction given to the jury on Ienco's firearm offense, although proper when it was given, was erroneous. *Id.* at 570. Ienco was charged with "using or carrying" a firearm in the commission of a crime, and the jury was instructed that Ienco could be convicted on this charge if the jury merely found that he knowingly possessed the firearm at the time. But in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which was decided after Ienco's conviction but before his appeal, the Supreme Court held that the proper jury instruction for this offense would require the jury to find that a defendant actively employed the firearm, at a minimum by brandishing or waving it, rather than merely having it in his possession. *Id.* at 142–50, 116 S.Ct. 501. Thus, the jury instruction given at Ienco's trial was error. *Ienco*, 92 F.3d at 570.

The Court of Appeals also found that the trial judge had committed error when, late in the trial, he reversed his earlier decision and announced that he would give the jury a *Pinkerton* instruction under which Ienco could be held responsible for crimes committed by his co-conspirator

Iovine. *Id.* at 569 (citing *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)). With the judge's prior assurance that the *Pinkerton* instruction would not be given, Ienco's attorney argued that the more serious firearm offenses were committed by Iovine. When the judge later announced that he intended to give a *Pinkerton* instruction after all, that defense strategy became a trap for Ienco since he could now be held responsible for crimes he had tried to prove Iovine had committed.

Ienco had not objected at trial to the erroneous jury instruction, so the standard of review should have been that of plain error. But the government argued on appeal that the error was not prejudicial beyond a reasonable doubt. By so doing, the Court of Appeals found that the government waived the correct and less stringent standard of plain error. Therefore, the Court of Appeals found that the use of this instruction was reversible error. In view of the multiple jury instruction errors, the Court of Appeals remanded the case for a new trial, irrespective of the outcome of the second suppression hearing.

At the second suppression hearing, the district court determined that the officers' version of the arrest was not credible. The court found that the officers had de-

tained Ienco and Iovine in the squad car before there was probable cause to effect an arrest.[3] As such, the arrest was illegal and all of the evidence found as a result of that arrest, including the firearms in the rental car and the explosives in the hotel room, was inadmissible. *United States v. Ienco,* No. 94 CR 586, 1998 WL 249233, at *8 (N.D.Ill. May 11, 1998). Therefore, Ienco's motion to suppress the evidence was granted.[4] *Id.*

The government subsequently withdrew its indictments against Ienco. Ienco then brought these claims of malicious prosecution against Angarone, McGann, and the City of Chicago. Defendants Angarone and McGann have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56 for failure to state a valid claim for relief under 42 U.S.C. § 1983.

## LEGAL STANDARDS

Summary judgment is proper when the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.,* 40 F.3d 146, 150 (7th Cir.1994). In determining whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable

---

3. Because the officers retained both men's personal effects, and the squad car's rear-seat doors and windows could not be opened from the inside, the court determined that Ienco and Iovine's detention in the back of the car while the officers investigated the complaint amounted to an arrest. *United States v. Ienco,* No. 94 CR 586–1, 1997 WL 392188, at *3 (N.D.Ill. July 3, 1997).

4. The procedural history is somewhat more complicated than this summary implies. On remand, the district court partially granted Ienco's motion to suppress but retained jurisdiction over the remainder. The government appealed. Ienco moved to dismiss on the

basis that the government lacked jurisdiction to appeal, since his motion was in part still before the district court. The Court of Appeals instructed the district court to grant the motion to suppress in its entirety, in order to bring all appealable issues to ripeness at the same time. This the district court did, and the government appealed the full grant of the motion to dismiss. The Court of Appeals affirmed the district court's grant of Ienco's motion to suppress, holding that the arrest was premature and the physical evidence and co-defendant Iovine's custodial statements and trial testimony must be suppressed. *Ienco,* 1998 WL 249233.

to, and draw all reasonable inferences in favor of, the non-moving party. *Pafford v. Herman,* 148 F.3d 658, 665 (7th Cir.1998).

## ANALYSIS

■ Ienco brings this action under 42 U.S.C. § 1983 against the City of Chicago and against Police Officers Angarone and McGann, both individually and in their official capacities as members of the Chicago Police Department. A suit against a government officer in his official capacity is actually a suit against the government entity for which the officer works. *Monell v. Dept. of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As such, Ienco's claims against the City of Chicago are redundant to those against the police officers in their official capacity.[5]

■ Section 1983 provides that any person who, under color of law, causes the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. An action against a municipality is one against a "person" for purposes of § 1983. *Monell,* 436 U.S. at 689, 98 S.Ct. 2018. To bring a § 1983 action against a municipality, a plaintiff must allege three things: (1) that he suffered a deprivation of a constitutional right; (2) as a result of either an official policy or custom; (3) which was the proximate cause of his injury. *Johnson v. City of Chicago,* 711 F.Supp. 1465, 1467 (N.D.Ill.1989). It is unnecessary for this Court to reach the analysis of either "official policy or custom," or that of proximate cause, however, because Ienco has failed to establish any valid claim that he was subjected to the constitutional injury he alleges, *i.e.* malicious prosecution.

**A. Ienco's Claim Fails to State a Valid Cause of Action for Malicious Prosecution**

■ The federal and state causes of action are linked. To bring a § 1983 action for malicious prosecution, a plaintiff must allege that he has satisfied the requirements of a state law cause of action for malicious prosecution. *Cervantes v. Jones,* 188 F.3d 805, 809 (7th Cir.1999). As explained below, the Illinois state law cause of action for malicious prosecution has five required elements. *See Washington v. Summerville,* 127 F.3d 552 at 557 (7th Cir.1997) (citations omitted). To prevail on the state law claim, a plaintiff must prove every one of these elements. *Id.* (citing *Swick v. Liautaud,* 169 Ill.2d 504, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1242 (1996) (additional citations omitted)).

Ienco's claims for malicious prosecution fail as a matter of law for two distinct reasons, either of which would be sufficient to grant full summary judgment in favor of Defendants. Ienco fails to satisfy at least two of the five required elements of the Illinois state law cause of action, and because the federal cause of action requires that he satisfy all elements of the state claim, Ienco's federal claim fails as well.

■ To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: (1) the defendant commenced or continued an original criminal or civil proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) the proceeding was without probable cause; (4) the defendant acted maliciously in initiating or continuing the proceeding; and (5) the plaintiff was injured. *Washington,* 127 F.3d at 557 (citations omitted). All of these elements must be proven or the claim fails.

---

**5.** In fact, the Court stayed the proceedings against the City of Chicago pending resolution of this motion.

*Id.* (citing *Swick,* 215 Ill.Dec. 98, 662 N.E.2d at 1242 (additional citations omitted)).

For the purposes of a motion for summary judgment, Ienco's incarceration subsequent to his conviction on criminal charges arguably meets the requirement of a legal injury specified in the fifth element of the cause of action. Ienco's claim, however, fails to meet at least two of the four other required elements.[6]

### 1. The Proceedings Did Not Terminate in Plaintiff's Favor

 In order to satisfy the second element of the state law malicious prosecution cause of action, a plaintiff has the burden of proving that the underlying criminal proceeding terminated in a manner indicative of his innocence. *See Washington,* 127 F.3d 552. Thus, a plaintiff claiming malicious prosecution must be innocent of the crime charged in the underlying prosecution. *Hector v. Watt,* 235 F.3d 154, 156 (3d Cir.2000). *See also* Prosser and Keeton on the Law of Torts 885 (5th ed.1984) (citing Restatement of Torts § 657) ("[I]t is always open to the defendant to escape liability by showing in the malicious prosecution suit itself that the plaintiff was in fact guilty of the offense with which he was charged."). A favorable termination, for purposes of a malicious prosecution claim, must be one that deals with the factual issues of a case. *Cult Awareness Network v. Church of Scientology Int'l,* 177 Ill.2d 267, 226 Ill. Dec. 604, 685 N.E.2d 1347, 1350 (1997) (citations omitted).

In this case, the factual issues are whether Ienco did, in fact, illegally transport firearms and explosives to Chicago,

attempt extortion, and carry or use those firearms in the attempt. The termination of this case did not ultimately deal with these issues. Although Ienco was convicted of the criminal charges against him, the conviction was vacated as a result of technical errors by the trial judge, and the matter was remanded for a new suppression hearing and a new trial. *Ienco,* 92 F.3d at 569–70. Ienco's motion to suppress the evidence against him was subsequently granted because the court found that the evidence was discovered as the result of an arrest made before probable cause was established, *Ienco,* 1997 WL 392188, at \*6, and the government withdrew its indictments.

 A conviction based on reliable evidence that is later suppressed under the Fourth Amendment does not prove innocence of the crime charged. *Gonzalez v. Entress,* 133 F.3d 551, 555 (7th Cir.1998). The criminal proceedings against Ienco were terminated by withdrawal of the indictment against him, subsequent to his successful motion to suppress the evidence found after his arrest. This is neither a finding indicative of innocence nor one that deals with the factual issues of the case. It does not qualify as a favorable termination of his criminal proceedings, and Ienco's claim therefore fails the second prong of the state law cause of action.

### 2. There Was Probable Cause for the Criminal Proceedings

 Assuming, *arguendo,* that Ienco could satisfy the other elements of the state law cause of action for malicious prosecution, he must still show that the proceedings against him were initiated or continued without probable cause. Ienco

---

**6.** The first element, whether Defendants commenced or continued criminal proceedings, and the fourth element, malicious intent, are mixed questions of fact and law, which this Court finds unnecessary to consider because Ienco's claim fails to establish two other required elements of the state law cause of action.

also fails to demonstrate this element as well.

■ A grand jury indicted Ienco on five counts of violating federal law. Under Illinois law, a grand jury indictment is prima facie evidence of probable cause. *Bontkowski v. United States*, 28 F.3d 36, 37 (7th Cir.1994). Ienco, citing *Tribblet v. Sanchez*, No. 95 C 6816, 1997 WL 106303, at *3 (N.D.Ill. Feb.12, 1997), maintains that the "officers cannot claim they had probable cause if the evidence upon which probable cause was based was obtained in an unconstitutional manner." (R. 21, Pl.'s Mem. Opp'n to Defs. Angarone and McGann's Mot. Summ. J. at 14.) *Tribblet* is inapplicable here: Ienco confuses probable cause for arrest with probable cause for prosecution. In *Tribblet*, the arresting officers attempted to use evidence they seized in an illegal search to show they had probable cause to conduct that search in the first place. The *Tribblet* Court properly rejected this post-hoc rationale and held that the search was unconstitutional. *Tribblet*, 1997 WL 106303, at *3. The Illinois state law cause of action for malicious prosecution, however, refers not to a lack of probable cause for the arrest but to a lack of probable cause for the prosecution.

In this case, at the time the decision to prosecute Ienco was made, the authorities had evidence that Ienco and Iovine had illegally transported two firearms, ammunition, and explosives from New York to Chicago, with the apparent intent of using them to collect an alleged business debt. Moreover, a state law criminal complaint had been filed, followed by a federal complaint, and the men had been indicted by federal grand jury. There was more than adequate probable cause to bring criminal proceedings against Ienco and Iovine. That the Court of Appeals later determined that Angarone and McGann did not have probable cause to arrest Ienco and Iovine when they did does not operate retroactively to negate the fact that probable cause existed to initiate criminal proceedings against them. Ienco fails to show that the proceedings against him were brought without probable cause.

**B. Claims Against the City of Chicago are Dismissed**

Ienco's claims against the City of Chicago depend entirely on finding Defendant officers, in their official capacities, liable under § 1983. *See Monell*, 436 U.S. 658, 98 S.Ct. 2018. Because this Court finds that all of Ienco's claims against the officers are without merit, Ienco's claims against the City of Chicago are dismissed.

## CONCLUSION

For the foregoing reasons, Angarone and McGann's motion for summary judgment, (R. 18–1), is granted as to all of Ienco's claims against them, both personally and in their official capacities. Furthermore, Ienco's claims against the City of Chicago are dismissed. The Clerk of the Court is directed to enter final judgment, pursuant to Fed.R.Civ.P. 58, against Ienco and in favor of the defendants.